UNITED STATES of America
v.
**Eugene MUZYCHKA, Appellant.**
**No. 83–1246.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 28, 1983.

Decided Jan. 23, 1984.

Certiorari Denied May 21, 1984.
See 104 S.Ct. 2390.

Neil E. Jokelson (argued), Jeremy T. Ross, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Chief of Appeals, William B. Carr, Jr. (argued), Asst. U.S. Attys., Philadelphia, Pa., for appellee.

Before GIBBONS and SLOVITER, Circuit Judges and CALDWELL, District Judge.*

GIBBONS, Circuit Judge:

Eugene Muzychka appeals from a judgment of sentence imposed following a conditional guilty plea to charges of violating 21 U.S.C. §§ 841(a)(1), 846 (1982) and 18 U.S.C. § 1952 (1982).[1] Muzychka's plea re-

---

* Hon. William W. Caldwell, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

1. 21 U.S.C. § 841(a)(1) (1982) provides that it "shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance ...." Section 846 makes unlawful an attempt or conspiracy to violate section 841.

18 U.S.C. § 1952 (1982) provides in pertinent part:

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
(1) distribute the proceeds of any unlawful activity; or
(2) commit any crime of violence to further any unlawful activity; or
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

served the right to object on appeal to the district court's rulings on motions to suppress evidence. *See United States v. Moskow,* 588 F.2d 882, 884–90 (3d Cir.1978). Muzychka contended (1) that *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), required the suppression of certain evidence obtained by the government after May 18, 1981, and (2) that *United States v. Starks,* 515 F.2d 112 (3d Cir.1975), and *Government of the Virgin Islands v. Testamark,* 570 F.2d 1162 (3d Cir.1978), required the suppression of other evidence obtained prior to that date. The trial court denied both motions. We agree with those rulings, and we affirm.

### I.

Muzychka's difficulties with the law grow out of his dealings with Jack Naiman and Ronald Raiton. Those dealings occurred, unfortunately for Muzychka, at times when both Naiman and Raiton were cooperating with the government by distributing phenyl–2–propanone (P–2–P) to customers who would use that substance in the manufacture of methamphetamine, a controlled substance. By the spring of 1981, both Raiton and Naiman had been arrested on drug charges and were cooperating, pursuant to plea agreements, in obtaining evidence against potential P–2–P purchasers.

In April of 1981, Naiman approached Muzychka in Philadelphia for the purpose of arranging a sale of P–2–P. On May 6 they met and, in a conversation tape recorded by Naiman, Muzychka agreed to purchase twelve gallons of P–2–P. On May 14 Muzychka delivered to Naiman $20,000 in partial payment for the anticipated twelve-gallon shipment. This May 14 conversation was also recorded.

On May 18, Muzychka and Naiman traveled to Fort Lauderdale, Florida, for the purpose of obtaining delivery of twelve gallons of P–2–P from Naiman's supplier, Ronald Raiton. At that time Muzychka did not yet know Raiton. Raiton could only deliver eight gallons, for which Muzychka paid Naiman an additional $18,500. Naiman placed

these eight gallons of P–2–P in the trunk of a rented car which Muzychka intended to drive to Philadelphia.

Unknown to Muzychka, however, he and Naiman were under surveillance by an agent of the Federal Drug Enforcement Administration. That agent obtained the cooperation of Fort Lauderdale police, who stopped the rented car driven by Muzychka soon after it left the Fort Lauderdale airport. Muzychka proved to have no driver's license; Fort Lauderdale police officers then arrested him and took him to the Fort Lauderdale police headquarters. At the time of the arrest, police informed Muzychka that he had been arrested for possession of P–2–P. Although Muzychka was detained for several hours, Fort Lauderdale police later released him without explanation. Florida authorities lodged no formal charges against Muzychka—either for driving without a license or for possession of P–2–P. The rented car and its contents were impounded.

Muzychka returned to Philadelphia, where on June 24, 1981 he received an unexpected telephone call from Raiton. That call was inspired by officials of the Federal Drug Enforcement Administration. Raiton introduced himself to Muzychka by asking if Muzychka had ever traveled to Florida with Naiman. When Muzychka answered affirmatively, Raiton encouraged him to return the call from a phone booth. Muzychka took the bait and called Raiton. The return call was recorded. In this conversation, with encouragement from Raiton, Muzychka incriminated himself in the purchase of P–2–P from Naiman. Subsequent recorded telephone conversations between Muzychka and Raiton during July and August, 1981, further incriminated Muzychka. Eventually Muzychka paid Raiton $28,000 for what Raiton represented (falsely) to be an additional eight gallons of P–2–P. It is undisputed that all the conversations between Raiton and Muzychka were made while Raiton was acting as an informant for the Drug Enforcement Administration. It is also undisputed that all

(b) As used in this section "unlawful activity" means (1) any business enterprise involving

... narcotics or controlled substances .... 18 U.S.C. § 1952 (1982).

the conversations with Raiton occurred after Muzychka's arrest on May 18, 1981.

## II.

Muzychka contends that his interrogation by Raiton violated the sixth amendment right recognized in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). That case holds that the sixth amendment right to counsel prohibits the use at trial against a defendant of statements elicited by government agents in the absence of counsel after that sixth amendment right has attached. Muzychka urges that the *Massiah* right to counsel attached on May 18, 1981, when the Drug Enforcement Administration caused Fort Lauderdale police to arrest him for possession of P–2–P obtained from Naiman and Raiton. Although the government urged that the Fort Lauderdale arrest was for a traffic offense, the district court found as a fact that he had been arrested for handling P–2–P. The government does not dispute that finding.

 In rejecting Muzychka's *Massiah* contention, however, the district court relied upon the fact that Muzychka had initiated the contact with Raiton by trying to reach Naiman. That effort, the court concluded, sufficed to take the case out of the *Massiah* rationale. The government does not attempt to defend this rationale, and we reject it. The undisputed facts are that Raiton was cooperating with the government pursuant to an agreement made on June 11, 1981, and that he deliberately elicited evidence connecting Muzychka with the P–2–P seized in Florida. As it happens, the record shows that Raiton himself initiated the call to Muzychka. However, even if Muzychka had initiated the call to Raiton, that fact would have been irrelevant. If the sixth amendment right has attached and a government agent has deliberately elicited information from the defendant in the absence of counsel, then the fact that one or another of the parties had initiated

the conversation is immaterial. *See Beatty v. United States,* 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967), *rev'g per curiam Beatty v. United States,* 377 F.2d 181, 188–90 (5th Cir.1967); *United States v. Anderson,* 523 F.2d 1192, 1196 n. 3 (5th Cir.1975); Kamisar, Brewer v. Williams, Massiah, *and* Miranda: *What is "Interrogation"? When Does it Matter?,* 67 Geo.L.J. 1, 44 n. 286 (1978). Thus we must decide whether the sixth amendment right recognized in *Massiah* had attached at the time Raiton recorded the telephone conversations with Muzychka.

## III.

On the basis of a search of a vessel, federal agents arrested, arraigned, and later indicted Winston Massiah for narcotics possession. Massiah retained a lawyer, pleaded not guilty, and was released on bail. Federal officials also charged Jesse Colson with possession of narcotics and with having conspired with Massiah. Colson later permitted government agents to install a radio transmitter under the seat of his automobile. Massiah entered the automobile and made a number of incriminating statements to Colson. A federal agent in a nearby car equipped with a radio receiver overheard this conversation and testified to Massiah's remarks at trial.

The Supreme Court held that the introduction of Massiah's remarks at trial elicited from him after his indictment and in the absence of counsel violated the sixth amendment. Writing for the court, Justice Stewart relied principally upon the concurring opinions of four Justices [2] in *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). These "four concurring Justices," Justice Stewart wrote, "pointed out that the Constitution required reversal of the conviction upon the sole and specific ground that the confession had been deliberately elicited by the police after the defendant had been indicted, and therefore at a time when he was clearly entitled to a lawyer's help." 377 U.S. at 204, 84

---

2. *See Spano v. New York,* 360 U.S. 315, 324, 79 S.Ct. 1202, 1207–1208, 3 L.Ed.2d 1265 (1959) (Douglas, J., joined by Black & Brennan, J.J.);

*id.* at 326, 79 S.Ct. at 1209 (Stewart, J., joined by Douglas & Brennan, JJ.).

S.Ct. at 1202. "Anything less," Justice Stewart reasoned, "might deny a defendant 'effective representation by counsel at the only stage when legal aid and advice would help him.'" *Id.,* quoting *Spano v. New York,* 360 U.S. 315, 326, 79 S.Ct. 1202, 1209, 3 L.Ed.2d 1265 (1959) (Douglas, J., concurring). Officials had "deliberately elicited"[3] from *Massiah,* as they had from Spano, incriminating remarks after those defendants had been indicted. 377 U.S. at 204, 206, 84 S.Ct. at 1201–1202, 1203. Consequently, the Court concluded, the sixth amendment had been violated by the introduction at trial of *Massiah's* incriminating words, "deliberately elicited from him after he had been indicted and in the absence of his counsel." *Id.* at 206, 84 S.Ct. at 1203.

The Supreme Court has not confined the sixth amendment right to counsel established in *Massiah* to the period following an indictment. Rather, the Court has held that the *Massiah* right to counsel attaches upon the commencement of "adversary judicial criminal proceedings" against an accused. *See Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion); *Moore v. Illinois,* 434 U.S. 220, 226–27, 98 S.Ct. 458, 463–464, 54 L.Ed.2d 424 (1977) (adopting language of *Kirby* plurality). Thus, it is settled that the sixth amendment right to counsel attaches at an arraignment if under the applicable rules important proceedings may take place which could disadvantage the defendant.

*See White v. Maryland,* 373 U.S. 59, 59–60, 83 S.Ct. 1050, 1050–1051, 10 L.Ed.2d 193 (1963) (per curiam); *Hamilton v. Alabama,* 368 U.S. 52, 53–54, 82 S.Ct. 157, 158–159, 7 L.Ed.2d 114 (1961). Moreover, the sixth amendment right to counsel attaches at a preliminary hearing. *See Moore v. Illinois,* 434 U.S. 220, 228, 98 S.Ct. 458, 464–465, 54 L.Ed.2d 424 (1977); *Coleman v. Alabama,* 399 U.S. 1, 7–9, 90 S.Ct. 1999, 2002–2003, 26 L.Ed.2d 387 (1970). Rule 5(b) of the Federal Rules of Criminal Procedure authorizes arraignments before a United States Magistrate for certain misdemeanors. The procedures specified in the Rules of Procedure for the Trial of Minor Offenses before United States Magistrates which are thereby applicable clearly implicate the sixth amendment right to counsel. *See* Fed.Mag. R.Crim.P. 2. Rule 5.1 provides for preliminary examinations, and proceedings under that rule fall within *Coleman v. Alabama. See* Fed.R.Crim.P. 5.1(a) (right to cross-examine witnesses and introduce evidence); 5.1(b) (defendant may be discharged upon showing of no probable cause); *Moore v. Illinois,* 434 U.S. 220, 228, 98 S.Ct. 458, 464–465, 54 L.Ed.2d 424 (1977); *Gerstein v. Pugh,* 420 U.S. 103, 122–23, 95 S.Ct. 854, 867–868, 43 L.Ed.2d 54 (1975) (right to counsel attaches under these circumstances).[4] Thus, if Raiton's interrogation had occurred after arraignment, preliminary hearing, or indictment, the *Massiah* rule would apply. Raiton's inducements to incrimination were more than sufficient to

---

**3.** Massiah may well have been subject to "interrogation" by Colson—albeit not "custodial" interrogation—within what would later become the meaning of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, such "interrogation" within the meaning of *Miranda* is not required by *Massiah. See United States v. Henry,* 447 U.S. 264, 271–72, 100 S.Ct. 2183, 2187–2188, 65 L.Ed.2d 115 (1980). The operative language of *Massiah* is that of "deliberate[ ] elicit[ation]." 377 U.S. at 204, 206, 84 S.Ct. at 1203; *see Brewer v. Williams,* 430 U.S. 387, 399, 97 S.Ct. 1232, 1239–1240, 51 L.Ed.2d 424 (1977). Conduct not rising to the level of interrogation may nevertheless satisfy the "deliberately elicited" test of *Massiah. See Rhode Island v. Innis,* 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 1689 n. 4, 64 L.Ed.2d 297 (1980); Kamisar, *supra,* 67 Geo. L.J. at 6, 37–55.

**4.** The decision in *United States v. Ammar,* 714 F.2d 238 (3d Cir.1983), where we stated that the sixth amendment right to counsel "does not extend to the pre-indictment period," *id.* at 261, is not to the contrary. In that case, the challenged conversation occurred before Judith Ammar's arrest, *id.* at 244, and therefore before any Rule 5.1 preliminary hearing. The statement in *Ammar* at p. 261 to which the government refers was made in the context of the fact situation before the court and nothing in that opinion indicates that the court was enunciating a general proposition that the sixth amendment right to counsel does not attach after a Rule 5.1 preliminary hearing. As indicated in the text above, it is clear that the *Massiah* right to counsel attaches after the first adversary judicial proceeding.

satisfy the *Massiah* standard. *See United States v. Henry*, 447 U.S. 264, 270–74, 100 S.Ct. 2183, 2186–2187, 2188–2189, 65 L.Ed.2d 115 (1980); *Brewer v. Williams*, 430 U.S. 387, 399–401, 97 S.Ct. 1232, 1239–1240, 1241 (1977); note 3, *supra*.

In this instance, however, although Muzychka was arrested for possession of P–2–P, he was neither arraigned nor presented for preliminary hearing on that or any other charge until after Raiton had elicited information from him. Muzychka nevertheless urges that the *Massiah* rule should apply to Raiton's post-arrest elicitation of evidence in this case. He presses two arguments in this respect. First, Muzychka maintains that his arrest by Florida officers at the behest of federal agents alone triggered the right to counsel. He argues persuasively that once he was the target of the Drug Enforcement Administration, he was in need of counsel, especially counsel who might warn him about self-incrimination. Second, Muzychka urges that if his arrest alone did not trigger the right to counsel, then the arrest coupled with the circumstances of Raiton's deception together triggered the sixth amendment right. Muzychka notes that federal agents tempted him to solicit information from Raiton by concealing the circumstances surrounding Muzychka's release by Florida officials after his arrest on May 18.

Absent a sixth amendment right to counsel, Muzychka had no constitutional right to be free from governmental investigation. *See Hoffa v. United States*, 385 U.S. 293, 300–04, 87 S.Ct. 408, 412–413, 414, 17 L.Ed.2d 374 (1966).[5] Thus his claim for suppression of the Raiton recordings depends on whether a sixth amendment right to counsel attached at the time of his conversations with Raiton. In resolving that issue it is appropriate to consider the development of the Supreme Court's efforts toward control of police methods of interrogation from *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), through *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and thereafter.

### A.

In 1959 a unanimous Supreme Court reversed a conviction in a murder case on the ground that the state trial court should not have admitted the defendant's confession. The majority of the court, in an opinion by Chief Justice Warren, held that admission of the confession violated the fifth amendment privilege against self-incrimination because, under the totality of the circumstances, it was involuntary. *Spano v. New York*, 360 U.S. 315, 323–24, 79 S.Ct. 1202, 1207–1208, 3 L.Ed.2d 1265 (1959). Justices Black, Douglas, Brennan, and Stewart concurred in the judgment, but on the separate ground that the confession, whether voluntary or not, should not have been admitted because it had been obtained in the absence of counsel after the sixth amendment right to counsel had attached. In *Spano* the interrogation occurred after an indictment had been returned. 360 U.S. at 325, 79 S.Ct. at 1208 (Douglas, J., concurring); *id.* at 327, 79 S.Ct. at 1209 (Stewart, J., concurring).

The position of Justices Black, Douglas, Brennan, and Stewart—that the sixth amendment prohibits the use of statements obtained in the absence of counsel by government interrogation after indictment—did not attract a majority in the Supreme Court until the resignations, in the October 1961 Term, of Justices Frankfurter and Whittaker. In the October 1963 Term, the minority view in *Spano v. New York* became the law when Chief Justice Warren and Justice Goldberg joined Justice Stewart's opinion of the Court in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Like *Spano*, the governmental interrogation in *Massiah* occurred after indictment. Since *Massiah*, it has been settled that the sixth amendment right to counsel attaches no later than in-

---

**5.** No argument is made that Muzychka was "in custody" or was subject to "custodial interrogation" within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

dictment, and that statements deliberately elicited by the government in the absence of counsel are thereafter inadmissible. Justice Stewart's analysis in *Massiah,* it must be noted, related the exclusion of such evidence to the effectiveness of counsel after the commencement of judicial proceedings, and not to the reliability of the defendant's statements alone. Voluntariness, and thus reliability, were for Justice Stewart fifth amendment rather than sixth amendment issues, at least until the commencement of judicial proceedings. After that time, Justice Stewart saw the right to counsel as a requisite for the protection of fifth amendment values.

Although *Spano* involved post-indictment interrogation, a plausible reading of the concurring opinions in that case is that the four concurring Justices were attempting to develop a *per se* rule respecting interrogation, based on interference by the police with the right to effective counsel, which would have avoided the often difficult and time-consuming litigation over issues of voluntariness. After the *Spano* minority became a majority in *Massiah,* Justice Stewart's opinion of the Court, although written narrowly, could plausibly have been read as addressing this same concern by utilizing the sixth amendment right to counsel as a basis for a *per se* prohibition against interrogation by government agents when an investigation became focused on an individual.

A month later, however, Justice Stewart made it clear that this was not the direction in which he would move. The occasion was his dissent in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), in which Justice Stewart distinguished *Massiah* because it involved "the deliberate interrogation of a defendant after the initiation of *judicial* proceedings against him." 378 U.S. at 493, 84 S.Ct. at 1766 (Stewart, J., dissenting) (emphasis added). "Under our system of criminal justice," he observed, "the institution of formal, meaningful judicial proceedings, by way of indictment, information, or arraignment, marks the point at which a criminal investigation has ended

and adversary proceedings have commenced. It is at this point that the constitutional guarantees attach which pertain to a criminal trial." *Id.* at 493–94, 84 S.Ct. at 1766.

The opinion of the Court in *Escobedo v. Illinois,* written by Justice Goldberg, represents the high watermark of the movement in the Supreme Court to control police methods of interrogation through the sixth amendment. Justice Goldberg noted that the interrogation took place before the defendant was indicted:

> But in the context of this case, that fact should make no difference. When petitioner requested, and was denied, an opportunity to consult with his lawyer, the investigation had ceased to be a general investigation of "an unsolved crime." *Spano v. New York,* 360 U.S. 315, 327 [79 S.Ct. 1202, 1209, 3 L.Ed.2d 1265] [ (1959) ] (Stewart, J., concurring). Petitioner had become the accused, and the purpose of the interrogation was to "get him" to confess his guilt despite his constitutional right not to do so.

> . . . . .

> The "guiding hand of counsel" was essential to advise petitioner of his rights in this delicate situation. *Powell v. Alabama,* 287 U.S. 45, 69 [53 S.Ct. 55, 64, 77 L.Ed. 158] [ (1932) ]. This was the "stage when legal aid and advice were most critical to petitioner." *Massiah v. United States, supra,* at 204 [84 S.Ct. at 1201–1202]. It was a stage surely as critical as was the arraignment in *Hamilton v. Alabama,* 368 U.S. 52 [82 S.Ct. 157, 7 L.Ed.2d 114] [ (1961) ], and the preliminary hearing in *White v. Maryland,* 373 U.S. 59 [83 S.Ct. 1050, 10 L.Ed.2d 193] [ (1963) (per curiam) ].

378 U.S. at 485, 486, 84 S.Ct. at 1762. In *Escobedo* the defendant, while in custody, asked to consult with his attorney, and the precise holding is limited to that state of facts:

> We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has

begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied "the Assistance of Counsel" in violation of the Sixth Amendment . . . .

378 U.S. at 490–91, 84 S.Ct. at 1765.

The precise holding in *Escobedo* does not protect Muzychka because, although Raiton's interrogation clearly took place at an accusatory stage (Muzychka had already been arrested with P–2–P in his constructive possession), Muzychka was not, at the time of his conversation with Raiton, in police custody, nor had he requested and been denied an opportunity to consult with counsel. Justice Goldberg's reasoning in *Escobedo,* however, that the sixth amendment right to counsel attached once the defendant was the target of an investigation, could with very little strain have been extended to a *per se* prohibition against governmental interrogation in the absence of counsel once an investigation evolved to the stage of an accusation which resulted in an arrest.

When the Supreme Court next addressed police interrogation, Justice Goldberg, author of *Escobedo,* was no longer a member. It is clear from the briefs filed in connection with the four cases decided in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and from the argument of counsel, that all involved saw in *Escobedo* the potential for a holding that all post-arrest interrogation by government agents in the absence of counsel was prohibited by

the sixth amendment.[6] That was not to be. Instead the court completely changed direction, abandoning the sixth amendment as a basis for control of post-arrest, pre-indictment interrogation by government agents. Although the name *Miranda* still evokes emotional reactions in some law enforcement quarters, the decision actually represents a major retreat from the Court's movement with respect to control of interrogation practices from *Spano v. New York* through *Escobedo v. Illinois.* Instead of moving the sixth amendment right to counsel forward to the arrest stage, and prohibiting governmental interrogation in the absence of counsel thereafter as a matter of law, the Court affirmatively authorized such interrogation. The privilege against self-incrimination was identified as primarily, if not solely, a fifth amendment problem, and fifth amendment interests were protected by imposing the requirement of a pre-interrogation ritualistic and largely ineffective[7] warning. Even the warning requirement was applied only to custodial interrogation.

*Miranda* represented the Supreme Court's first step toward the adoption of Justice Stewart's dissenting position in *Escobedo.* Although the Court rebuffed Justice Stewart's view that the sixth amendment has no applicability to pre-indictment interrogation, it also declined the invitation to require the presence of counsel during all post-arrest interrogation. The precise holding in *Escobedo*—that custodial interrogation in the absence of counsel may not continue when an accused requests counsel—was not overruled. Rather, as Professor Kamisar has put it, "by moving from a right to counsel base in *Escobedo* to a self-incrimination base, '*Miranda* [did] not [enlarge] *Escobedo* as much as it . . . *displaced*

---

6. *See, e.g.,* Brief for American Civil Liberties Union, Amicus Curiae, at 10–31; arguments of counsel reprinted in Y. Kamisar, W. LaFave & J. Israel, Modern Criminal Procedure 572–78 (5th ed. 1980).

7. The effectiveness of *Miranda* warnings is discussed in Griffiths & Ayres, *A Postscript to the*

*Miranda Project: Interrogation of Draft Protesters,* 77 Yale L.J. 300, 310–11 (1967); and Gibbons, *Practical Prophylaxis and Appellate Methodology: The Exclusionary Rule as a Case Study in the Decisional Process,* 3 Seton Hall L.Rev. 295, 314 (1972).

it.'" Kamisar, *supra,* 67 Geo.L.J. at 26; see *id.* at 25 n. 145, 40, 79 n. 464. As noted above, no claim has been made that Muzychka was interrogated in custody or that his statements were admitted in violation of *Miranda.*

Although .*Miranda* foreshadowed a retreat to Justice Stewart's position in *Escobedo,* it did not preordain that retreat. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)—in which the court established the right to counsel at a post-indictment lineup without relying on the existence of an indictment as a trigger for the right to counsel—seemed to confirm that view.[8] Nevertheless, Justice Stewart's vision of the function of the sixth amendment in the protection of other constitutional values commanded a plurality of the Court in *Kirby v. Illinois,* 406 U.S. 682, 688–90, 92 S.Ct. 1877, 1881–1882, 32 L.Ed.2d 411 (1972), and majorities of the Court in *Moore v. Illinois,* 434 U.S. 220, 226–27, 98 S.Ct. 458, 463–464, 54 L.Ed.2d 424 (1977), and *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). These cases hold that the right to counsel attaches "'at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Moore,* 434 U.S. at 226, 98 S.Ct. at 463, quoting *Kirby,* 406 U.S. at 689, 92 S.Ct. at 1882.

### B.

In light of these holdings, it cannot be maintained that the right to counsel was triggered solely by Muzychka's arrest by Florida authorities. That battle was waged and decided decisively in *Miranda.* There the Court declined to require the presence of counsel at all post-arrest interrogation, despite the argument that the presence of counsel was necessary to protect the right to be free of compelled incrimination. To the extent that some courts have suggested in dicta that an arrest alone marks the commencement of adversary judicial proceedings within the meaning of *Massiah,* we cannot agree.[9]

Nor can we agree that the right to counsel was triggered by Muzychka's arrest by Florida authorities coupled with the circumstances surrounding Raiton's conversations with him. Muzychka's argument is essentially that the government's technique of eliciting information from him was inherently coercive, and that counsel should have been present to insulate him against that coercion. These are fifth amendment values whose protection, before the commencement of adversary judicial proceedings, is now exhausted by *Miranda* and the due process and self-incrimination clauses. *See Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972–1973, 18 L.Ed.2d 1199 (1967). It is at this date too late to advocate the impressment of the sixth

**8.** In *Wade* the Court increased the sophistication of its analysis of the right to counsel in two respects wholly independent of the commencement of adversary judicial proceedings. First, the Court seized upon the sixth amendment guaranty of the right of the accused to have the assistance of counsel "for his defence," holding that this language guaranties assistance by counsel "whenever necessary to assure a meaningful 'defence.'" 388 .U.S. at 225, 87 S.Ct. at 1931. In this respect the Court expanded on the holding of *Escobedo,* pressing the sixth amendment into service to protect values other than the privilege against self-incrimination when necessary for a "meaningful defence" at "critical stages" of the proceedings. Second, the Court evaluated the necessity for counsel at a "critical stage" in light of the effectiveness that cross-examination would have at trial in the event counsel were absent from that stage. *Id.* at 230–32, 87 S.Ct. at 1933–1935. In addition, the Court continued the practice, begun in *Massiah* and *Escobedo,* of evaluating the salutary effect of the presence of counsel during critical phases of the proceedings. *Id.* at 232–35, 87 S.Ct. at 1935–1936. These analyses were not dependent on the existence *vel non* of an indictment.

**9.** *See United States v. Kenny,* 645 F.2d 1323, 1338 (9th Cir.1981), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981); *United States v. Zazzara,* 626 F.2d 135, 138 (9th Cir. 1980); *United States v. Nashawaty,* 571 F.2d 71, 74–75 (1st Cir.1978); *United States v. Sam Goody, Inc.,* 506 F.Supp. 380, 394 (E.D.N.Y. 1981); *United States v. Matthews,* 488 F.Supp. 374, 380–81 (D.Neb.1980).

amendment right to counsel in the service of fifth amendment values before the commencement of adversary judicial proceedings. Until adversary judicial proceedings have commenced, coercive methods of eliciting information from a defendant are governed by *Miranda* and due process and self-incrimination analyses.[10]

Muzychka also relies on the holding of *United States ex rel. Burton v. Cuyler,* 439 F.Supp. 1173, 1179–82 (E.D.Pa.1977). That case holds that the issuance of a state arrest warrant may, under the applicable state law, constitute the commencement of adversary judicial proceedings within the meaning of *Massiah.* We have no occasion to consider whether an arrest warrant issued under state law may constitute the commencement of formal judicial proceedings when state law regards the issuance of an arrest warrant as the equivalent of an indictment. It is undisputed that Florida authorities issued no arrest warrant for Muzychka in this case.[11]

■ Because Muzychka was not in custody, Raiton's interrogation did not require *Miranda* warnings. Because no adversary judicial proceedings had occurred prior to Raiton's elicitations, the sixth amendment rule announced in *Massiah* does not apply. Thus the court did not err in denying the motion to suppress the Raiton tapes.

## IV.

■ Muzychka also moved to suppress the tape recordings made by Naiman prior to the arrest in Fort Lauderdale. The ground for this motion is that since not all of his conversations with Naiman in April and May of 1981 were recorded, none of those recorded should be admitted. Muzychka does not contend that the unrecorded conversations were exculpatory. Nor does he contend that tape recordings were destroyed either deliberately or by inadvertence. Thus his claim does not fit within the due process rationale of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963), and *United States v. McCrane,* 547 F.2d 204, 205–08 (3d Cir.1976) (per curiam). Rather, he placed principal reliance on *United States v. Starks,* 515 F.2d 112 (3d Cir.1975), and *Government of the Virgin Islands v. Testamark,* 570 F.2d 1162 (3d Cir.1978). Neither case affords a ground for suppression of the Naiman tapes which were made.

In *United States v. Starks,* this court laid down standards of authentication to be met by the proponents of tape recordings offered in evidence. 515 F.2d at 121–22. Those recordings which the government proposed to offer in this case were authenticated. There is no evidence that they were altered so as to give a misleading account of the recorded conversations. The absence of other recordings does not bear upon the authenticity of the recordings which were made.

In *Government of the Virgin Islands v. Testamark,* we dealt with the failure of the police to preserve a sample of the defendant's blood which would have been relevant to the defense of intoxication. We held that the loss or destruction of that evidence

---

**10.** Muzychka did not urge that the use of Raiton's deceptions in obtaining evidence violated due process. Such a contention would, on this record, evidently be foreclosed by *United States v. Jannotti,* 673 F.2d 578, 606–10 (3d Cir.) (in banc), *cert denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982).

**11.** Muzychka also relies on *United States v. Lilla,* 534 F.Supp. 1247, 1280 (N.D.N.Y.1982), *aff'd in part and rev'd in part on other grounds,* 699 F.2d 99 (2d Cir.1983), holding that under certain circumstances the filing of a federal felony complaint may constitute the commencement of adversary judicial proceedings. In that case arrest warrants had been issued against the defendants under Fed.R.Crim.P. 5(a) before the time of the challenged conversations. *Id.* at 1275. We have no occasion to decide whether the issuance of an arrest warrant under Fed.R.Crim.P. 5(a) may constitute the commencement of adversary judicial proceedings. *But see* Kamisar, *supra,* 67 Geo.L.J. at 85–86 n. 503.

deprived the defendant of the right to compulsory process, and violated fundamental fairness, because no other evidence could substitute for the lost blood sample. 570 F.2d at 1166. For two reasons, *Testamark* is not controlling here. First, no tape recordings were lost or destroyed; rather, they were never made. Second, there is another means available for establishing what occurred during the unrecorded conversations with Naiman. Naiman can be subpoenaed, or Muzychka can testify.

What Muzychka proposes is essentially a *per se* rule that when the government utilizes an informant to record conversations with a target of an investigation, it must record all such conversations or none may be admitted. There is no justification for such a rule. Fed.R.Evid. 403 gives the court discretion to exclude relevant evidence on the ground that it presents an unfairly edited version of a series of transactions. There was no abuse of discretion in denying the suppression motion here, since no showing was made that the unrecorded conversations would have been exculpatory, or would have tended to make the recorded conversations seem less inculpatory. Moreover Muzychka was free to argue that selective recordation bore on the weight which a factfinder should attach to what was heard on the tapes.

## V.

Since the trial court did not err in denying the suppression motions addressed to either the Raiton or the Naiman tapes, the judgment of sentence will be affirmed.