WILLIAM (A SLAVE) *vs.* THE STATE.

[INDICTMENT FOR MURDER.]

1. *Partial confessions not admissible.*—A slave's confession to his master, though voluntary, is not admissible evidence against him, when it is shown that his master interrupted him, and would not let him finish his statement.

FROM the Circuit Court of Greene.
Tried before the Hon. A. A. COLEMAN.

THE indictment in this case, which was found at the October term, 1863, charged that the prisoner, who was a slave, "unlawfully, and with malice aforethought, killed Clarissa, a slave, the property of J. L. Bozeman, by cutting her with a knife, or instrument of like kind." "On the trial, at the October term, 1864," as the bill of exceptions states, "the State introduced J. L. Bozeman as a witness, who was the owner of the prisoner, and proposed to adduce as evidence certain confessions made by the prisoner to said witness, early in the morning of the day the homicide was committed. The prisoner objected to these confessions going to the jury as evidence, and asked leave of the court to examine the witness on his *voir dire ;* which was granted. The witness then stated the following facts : Early in the morning on the day of the homicide, before witness had got out of bed, the prisoner came to his house, and sent word in to him that he desired to see him ; and he sent back word, asking what he wanted. The prisoner did not say what he wanted, but again requested that witness would come out and see him. His request was refused, but was again repeated ; and witness then got up, dressed himself hastily, caught up a loaded whip, with which he usually whipped his slaves, went out into the yard where the prisoner was, and, in an angry and excited manner, said to him, 'What in the hell do you want with me' ? or words to that effect. The prisoner said, 'Master, I have killed Cla-

William (a slave) v. The State.

rissa'. Witness exclaimed, 'What! where did you kill her'?
The prisoner answered, 'At the gin-house'. Witness then
asked, 'How did you kill her?' and the prisoner answered,
'I cut her throat'. Witness asked some other questions, to
which the prisoner replied, (but witness did not remember
what,) and was going on to make other statements in re-
gard to the killing, when witness stopped him, and would
not hear anything more from him, and went immediately
to the gin-house. On this state of facts, the prisoner ob-
jected to the confessions going to the jury as evidence
against him, 1st, because said confessions were made
through the hope of reward, or fear of punishment; and,
2d, because said confessions were only partial, and the
prisoner was prevented by his master from making a full
and fair statement of the facts in relation to the killing."
The court overruled these objections, and allowed the con-
fession to go to the jury as evidence; to which rulings of
the court the prisoner duly reserved exceptions.

WM. P. WEBB, and W. COLEMAN, for the prisoner.
M. A. BALDWIN, Attorney-General, contra.

PHELAN, J.—When the confessions of a prisoner are
adduced against him, there is no rule of evidence better set-
tled, than that which requires that all he said at the time,
or which made part of the res gestœ, shall be received in
evidence, and taken together as a whole. It is true the jury
are authorized, and required, to weigh the whole, and may
give more credence to one part than to another, or none
whatever to some part, according to their sound discretion;
but the entire statement must be received. All the authori-
ties concur in this, and the rule itself is founded on the
most obvious principles of reason and justice.—1 Greenl.
Ev. § 218 ; 2 Russell on Crimes, 868; Roscoe's Cr. Ev. 55.

In the present case, the prisoner, after making certain
confessions about having killed the woman Clarissa, and
when he was going on to make further statements respect-
ing the transaction, was stopped by his master, and not
permitted to make his statement or confession complete.
The bill of exceptions says, that the witness, who was mas-

ter to the slave, asked some other questions, "to which the prisoner replied, (but witness did not remember what,) and was going on to make other statements in regard to the killing, when witness stopped him, and would not hear any thing more from him, and went immediately to the gin-house." The prisoner had come to the house, and called his master out, and then told him, "Master, I have killed Clarissa." Witness exclaimed, "What! where did you kill her?" The prisoner answered, "At the gin-house." The witness then asked, "How did you kill her?" and the prisoner answered, "I cut her throat." Then follows what is stated above, when the master stopped the slave, and would not allow him to complete his statement.

Notwithstanding the prisoner was thus stopped by his master, and was not allowed to make his statement of the transaction full, though he desired to do so, the court permitted the confessions, as far as they were made, to go to the jury, against the objection of the prisoner's counsel. In this we think the court erred.

I have not been able, after careful search, to find any case exactly corresponding with this in its facts; that is, where a prisoner had made a partial or unfinished statement or confession, and was prevented from finishing his statement, or making his confession full, by the command of some one having lawful authority over him. Such cases, in the nature of things, must be rare. But the principle above laid down, that all that the prisoner has confessed at the same time shall be received or none, entirely covers the case. If a magistrate, who is required to take down the statement or confessions of a prisoner in writing, should hear and take down a part of his statement, and then forbid the prisoner to proceed further; can there be any question, that such partial statement, when offered in evidence, would be ruled out? In the case of a slave, speaking with his master, the authority over him would be as great, if not greater than, that of the magistrate in the case supposed; and if the slave is forbid by his master to proceed with his statement, all that he has said ought to be rejected. When the prisoner said, "I cut her throat," and was about to proceed, how can it be known that he was not about to add, if

he had been permitted, "but it was to keep her from cutting mine." The prisoner confesses an act, which, unexplained, makes him guilty of murder. He is about to proceed to make other statements, but is authoritatively forbid. Indulging the presumption in favor of innocence, which the law always does, the presumption would be, that he was about to offer some explanation or exculpation of his conduct; and is this to be denied? A partial and unfinished statement of this kind should not be received in evidence. We can not fairly judge a writer or a speaker, on any given topic, upon the most ordinary occasions of life, until we have heard all he has to say on that topic; and when he has spoken, we are required to consider together all he has said, and are not allowed to garble. That which common fairness and justice universally forbid, in the most ordinary, and even insignificant affairs of life, the law can never sanction as a rule of evidence.

Judgment reversed, and cause remanded.