LEIGH M. CLARK, Retired Circuit Judge.
The judgment of conviction and sentence to imprisonment for life from which the appeal in the instant case was taken was based upon the following verdict of the jury:
“WE THE JURY FIND THE DEFENDANT GUILTY OF MURDER IN THE FIRST DEGREE AS CHARGED IN THE INDICTMENT AND FIX HIS PUNISHMENT AT IMPRISONMENT IN THE PENITENTIARY OF THE STATE OF ALABAMA FOR LIFE.”
The case had been submitted to the jury on defendant’s plea of not guilty, which was entered by defendant while accompanied by his appointed attorneys at the arraignment on December 6, 1984, to the two-count indictment returned on November 24, 1984; each count of the indictment charged the defendant with having “killed Harold Pur-vis Davidson by shooting him with a pistol, in violation of Title 14, § 314, of the Code of Alabama.” In recognition of the difference in the law between the date of the alleged crime and the date of the indictment that resulted from the adoption of the Alabama Criminal Code effective January 1, 1980, it was averred in each count of the indictment that the alleged murder occurred prior to January 1, 1980. There is no issue between the parties as to the last noted averment of the indictment. The undisputed evidence discloses that the victim was killed on September 9, 1974, more than five years before the effective date of the Alabama Criminal Code and more than ten years before the return of the indictment. The trial of the case commenced on January 28, 1985, and apparently was handled with commendable dispatch by all concerned. The defendant was represented on the trial by two attorneys appointed by the trial court by reason of defendant’s indi-gency. Said attorneys continue to represent him on appeal, as shown by the following colloquy immediately after the announcement by the trial court of the sentence imposed upon defendant:
“MR. PITTS [Defendant’s attorney]: Yes, Your Honor, we give notice of appeal.
“THE COURT: And you were appointed, I assume he is still indigent?
“MR. PITTS: Yes, sir. Are you?
“MR. BRIDGES: Yes, sir.
“THE COURT: You don’t have money to hire lawyers to appeal your case, or to pay for a transcript?
“MR. BRIDGES: No, sir.
“THE COURT: All right. And I would like to appoint you gentlemen, for the appeal. You have done a good job of representing him.
“MR. PITTS: All right, Judge.
“THE COURT: That is all.
“(Proceedings concluded).”
The extraordinarily lengthy period of time intervening between the alleged murder and the trial of the instant case tended, we think, to prevent a clear and concise transcript of the proceedings in the trial court. We are able to determine therefrom, however, that the chief witness against defendant as to the circumstances of the alleged murder herein was Mr. Jackie Oglesby, the same person as the appellant in the case of Oglesby v. State, 337 *1014 So.2d 377 (Ala.Cr.App.), Ex parte Oglesby, 337 So.2d 381 (Ala.1976). The opinions in the cited case disclose that the appellant therein was convicted in the trial court on a trial before a jury of perjury in a case in the circuit court of the same county as the trial court in the instant case and that his allegedly perjured testimony related to the homicide of Harold Purvis Davidson, the victim in the instant case, as to which it was stated in the opinion of the Court of Criminal Appeals, at 337 So.2d 379, as follows:
“The homicide case was called for preliminary hearing on the 23rd of December 1974, before Judge John Coleman. The appellant, Jackie Oglesby, was at this time placed under oath, and in this testimony he recanted, and stated that he had lied when he told Sheriff Mitchell that ‘he and Douglas Bridges had been out to Davidson’s Store about 3:30 on the afternoon of September 9, 1974/ and that all that was stated in the statement was not true, except for the part where he and Bridges went out there late that afternoon after hearing an ambulance and saw the sheriff bringing a body out on a stretcher.
“This transcript of a preliminary hearing also shows that in view of Oglesby at the preliminary hearing, the State would not be able to make out a prima facie case against Douglas Bridges and moved the court to dismiss the case, which was granted.

“The complete transcript of the preliminary hearing before Judge Coleman was stipulated into the evidence by the parties through their attorneys, and Judge Coleman testified that the appellant was under oath when he testified at the preliminary hearing. Also, identified by Judge Coleman was a warrant sworn out before him on October 31, 1974, by one Melvin L. Davidson, which charged Jefferson Douglas Bridges with the first degree murder of Harold Purvis Davidson by shooting him with a pistol.”
I.
The first issue presented by appellant is thus stated in the brief of his counsel:
“Did the Court commit error in admitting into evidence taped conversations between Defendant and a paid police informant over objections of defense counsel?”
The informant was Mr. Wayne Jones, who had been wired for sound and instructed by an officer of the Talladege Police Department to talk with Mr. Bridges about the Davidson murder case in such a way that his conversation with the defendant would be recorded on a tape. Mr. Jones succeeded in having a conversation with defendant and the tape of such conversation was returned to the Police Department, and Mr. Jones was furnished another tape, which he used in recording another conversation the same day with the defendant. Some of the proceedings, as shown by the transcript, are tremendously confusing, so confusing in fact that a large part of the transcript is devoted to misunderstandings between counsel for the State and counsel for defendant as to the contents of the taped conversations between informant Jones and the defendant. Prior to the playing of the tapes in the presence of the jury, a lengthy hearing was conducted out of the presence of the jury, as shown by the transcript from page 167 to page 207, wherein the contents considered a part of the tapes were considered. We now quote the first part of the many pages of the transcript as to the mentioned hearing out of the presence of the jury:
“MR. RUMSEY [District Attorney]: Judge, this is a transcript that my secretaries worked on until late last night of Tape Three and a portion of Tape Four.
“THE COURT: That is what exhibit number?
“MR. RUMSEY: That would be No. 22 and a portion of No. 23. And then also, being the same thing, would be No. 29 and a portion of No. 30. They have listened to them and Ann and Sally and Becky typed them last night. Altogether they would run some three hours and *1015 forty-five minutes. There are parts of them that are of interest and other parts that are not of interest, but it would be so long for the jury to listen to them all, we planned on just submitting or going into all of No. 3 and a portion of No. 4.
“THE COURT: But they would have access to all of them?
“MR. RUMSEY: Yes, sir, if they wanted to.
“MR. PITTS [Defendant’s Attorney]: We think that if they are allowed to be heard. We think they ought to be excluded. But if they are allowed to be heard they ought to hear all of them.
“THE COURT: He can offer whqt he wants to and you can offer what" you want to.
“MR. RUMSEY: They will be made available to the Defense.
“THE COURT: Are we to read this or are we supposed to listen to this. . I’ll go ahead and be reading it and when they read it we will take their objections. I have finished the first 24 pages. What objections do you have to the first 24 pages? On this first sentence on the second transcript you have handed me. What is that on there?
“MR. RUMSEY: That is evidently a remark the man is saying to himself while Bridges is out of the car.
“THE COURT: Why is he saying that?
“MR. RUMSEY: I don’t know.
“THE COURT: That will go out. That part on Page 24 is out and the first paragraph of the second transcript you handed me, Transcript of Page Four. That is out. Is there any other part of this that the State admits is not admissible?
“MR. GIDDENS [Defendant’s attorney]: We object to Tape No. 3, on page 8, the very first thing. Top of the page. Jones says: T figured the M.F. that killed him —’ I object to that as being prejudicial.
“THE COURT: Does the State agree to that one?
“MR. RUMSEY: That he ‘figured that if anybody killed him it was you.’?
“THE COURT: Yes. I’ll overrule that objection.
“MR. RUMSEY: He’s saying it to Bridges.
“THE COURT: Yes, that’s why I overruled.”
In response to appellant’s Issue I, counsel for Appellee cites and relies upon Hammond v. State, 354 So.2d 280, 292 (Ala.Cr.App.), writ quashed, 354 So.2d 294 (Ala.1977), cert. denied, 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978), wherein a similar contention by appellant was rejected. Whether the circumstances of the instant case are distinguishable from those involved in Hammond, we will not attempt to ascertain at this time in view of the complexities of the circumstances of the recordation and typed reproductions thereof of the conversation between Mr. Jones and the defendant in the instant case. We prefer to withhold our determination of this issue at the present time.
II.
By appellant’s second issue, he questions the ruling of the trial court set forth in the following portion of the cross-examination of the defendant by the district attorney as to what the defendant had said to the victim of the alleged murder and as to what the defendant had told Mr. Jones:
“Q. And Purvis [middle name of alleged victim] wouldn’t charge it to you. Is that right?
“A. I didn’t go in there.
“Q. And then you took that beer out of there. ‘Just robbed them of it, huh?’ And, T just took them’ cigarettes and beer.
“And then Jones said, ‘He just stuck that ‘M.F.’ up there and shot him in the head?’ And you said ‘turned it loose.’
“A. I don’t remember telling all that, no.
“Q. ‘Just like I turned it loose on that boy over there on South Street.’
“MR. GIDDENS: Judge, I object to that.
“THE COURT: That is—
“MR. RUMSEY: Judge, it is in evidence.
“A. I don’t remember all of that.
*1016 “MR. GIDDENS: Judge, I would like a ruling on that. To him talking about turning something loose, the gunshot on a boy on South Street.
“Q. It is in the tape. It is in evidence.
“MR. GIDDENS: It is not in the transcript.
“Q. Yes, it is too.
“THE COURT: I’ll overrule the objection.
“Q. What, Judge.
“THE COURT: I overruled the objection.”
Promptly after the defendant left the stand as a witness and returned to his seat in the courtroom, a recess was declared by the court, and defendant’s attorney moved for a mistrial by reason of what we have just quoted during cross-examination by the district attorney of the defendant. We quote the following as to the motion for a mistrial:
“THE COURT: Well, what was the question that he asked the witness?
“MR. GIDDENS: It wasn’t actually a question, Judge. It said, ‘Just like he shot that one on South Street.’ or something like that.
“MR. RUMSEY: I read him what is on this transcript, Judge. I said, ‘How did you kill that M.F.; man, just shot his brains out?’
“Bridges: ‘It ain’t nothing, Wayne, like the boy on South Street, just put it down there and pulled the ‘F’ing trigger.’ Now, that is what I said. And I asked him if that wasn’t what he said and he said there, like he did on every other thing that was incriminating, ‘I don’t remember saying that.’
“MR. GIDDENS: The point is, Judge, right here it says (inaudible) and the words that were inaudible, he is saying something about shooting a fellow on South Street. You can hear it on the tape and if it is so loud and clear, why does it say (inaudible) right here?
“MR. RUMSEY: Judge, I told you, at the very outset that I couldn’t guarantee the accuracy of this transcript, because we didn’t start on it until Monday afternoon.
“THE COURT: You justed [sic] asked the man if he said that?
“MR. RUMSEY: Yes. I read him this right here and asked him if he said that and he said, in fact, I think he said he didn’t remember. I don’t think it admitted to saying it or anything else.
“MR. GIDDENS: Judge, that was the point of our motion, to keep him from asking him things that would inflame the minds of the jury, about shooting some person that is unknown.
“THE COURT: Once the man took the stand, you could ask him if he said that. I'll overrule the motion for a mistrial.
“MR. RUMSEY: I would like to ask him a lot more.
“THE COURT: All right, are you ready to proceed. Bring the jury back in.”
As we have heretofore indicated, we find so much confusing testimony in the case, particularly as to the recordation of the conversations between the informant and the defendant, that we are unable to analyze as well as we would like to do some portions of the transcript in the case, but, we think the issue now under consideration should be considered in the light of defendant’s MOTION IN LIMINE that was granted by the trial court before the trial commenced, which alleged:
“1. The defendant believes and hence alleges that at his trial, the State will attempt to introduce taped conversations that will leave the jury with the impression that he has been involved as perpetrator or defendant and subsequently convicted in previous cases that are completely unrelated to nor tending in any to prove the offense at bar, other than to place defendant’s character in issue.”
We are inclined to the view that the trial court was in error in permitting the attorney for the State to inquire of the defendant as to whether he had not admitted in his conversation with the informant that he had shot the alleged victim in this case, by turning his pistol loose on him just like he *1017 “turned it loose on that boy over there on South Street.”
Ill, IV AND V.
Counsel for appellant in their brief state that “Issues three, four and five can be argued together,” and counsel for appellee proceeds to do so by stating as Issue III, “THE TRIAL COURT DID NOT ERR IN DENYING APPELLANT’S MOTION FOR CONTINUANCE” and confining its argument to the following statement:
“... The court was well within its discretion to do so. ‘It is well settled that the disposition of a motion for continuance is vested in the sound discretion of the trial court and that its ruling will not be disturbed on appeal, except upon a clear showing of abuse of discretion. Busby v. State, 412 So.2d 837 (Ala.Crim.App.1982); Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1939).’ Carroll v. State, 445 So.2d [952] 984 (Ala.Crim.App.1983). The State asserts that there is no evidence of such abuse of discretion by the trial court.”
We are of the opinion that appel-lee’s counsel has correctly stated the applicable law as to the discretion vested in the trial court as to whether a motion for continuance should be granted. We are also convinced that the learned trial judge did not consciously abuse the discretion vested in him in denying defendant’s motion for a continuance of the trial of the case. Neither the record proper nor the transcript of proceedings reveals fully the circumstances involved in the setting of the case for trial on a date less than two months from the date of arraignment and from the date defendant’s appointed attorneys could have first commenced their preparation for the trial, as to which they were greatly impeded by reason of a variety of circumstances indicated above. Some of the impediments were the passing of a decade subsequent to the alleged crime, the distances between places where possible witnesses could be located, the necessity for presenting pretrial motions for a hearing by the trial judge, the advisability of a large number of conferences between the attorneys and their client, who was incarcerated, and the misunderstanding as to much of the contents of a number of recorded tapes of the conversations between the paid informant and the defendant. We are reinforced in our belief that defendant’s attorneys should have been given more time to prepare the case for trial by our study of the lengthy transcript and some of the tapes that the secretaries of the district attorney worked on so late on one of the nights of the trial, a part of which was inaudible and almost all of which contained disgustingly obscene and filthy language on the part of the informant and on the part of the defendant. How much of the filthy language on the part of defendant was induced by the paid informant, we are unable to say, but some of it clearly was and this, of itself, would, in our opinion, have caused reaction by the jury unfavorable to the defendant. How much of all of this had a tendency to cause defendant’s attorneys to need more time in an effort to defend their client and how much time would have been consumed by them in discussing the case with their client we will not endeavor to estimate, but to lawyers and gentlemen such as defendant’s appointed attorneys are, the extraordinary circumstances imposed a burden to them in their efforts to represent the defendant that they should not have been called upon to bear.
We should say before concluding this opinion that neither the defendant nor his attorney made any conscious effort to engage in any improper delaying tactics. Promptly upon the State’s resting its case, defendant’s attorney moved for a directed verdict of acquittal. The trial court responded immediately as follows:
“I will overrule that motion. My question is, do you have a few witnesses we can proceed with today? It is ten after 4:00.
“MR. PITTS: We need some extra time to get everything together, Your Honor. We need to take a look at these tapes, for one thing.
“THE COURT: You are going to have that privilege. I am not calling on you to *1018 rest or anything. I just wanted to know if you have some witnesses we could go ahead and use today.
“MR. PITTS: We have one in Pell City I believe, who will have to come from there and if we could have until in the morning, we would appreciate it. So that we can get everything together.
“THE COURT: All right, bring the jury in.”
Thereupon, the jury returned to the jury box and was instructed to return at “9:00 in the morning.”
Immediately after the court convened the following morning, defendant’s attorney called defendant’s father as a witness, who was examined briefly by defendant’s attorney and by State’s attorney, and thereupon the defendant testified. During his testimony, both on direct examination and cross-examination, he admitted other unlawful acts and having been convicted of them, but he did not admit killing the victim in the instant case. He testified extensively as to the conversation that was recorded on tapes with Mr. Wayne Jones and said that both he and Jones had been drinking heavily previous to the conversation. We believe that defendant’s testimony was to the effect that, at the time the evidence shows without dispute that the victim was killed, the defendant had previously on the same day been drinking heavily.
We are persuaded that there is substantial evidence in the case that defendant was guilty of murder in the first degree as charged in the indictment, but we are not persuaded, by what we have learned from the record proper and the transcript of the proceedings, that his attorneys could not have been able to present a better defense than was presented if they had been given more time by the trial court to present defendant’s case to the jury, which was denied them by the overruling of defendant’s motion for a continuance. In our opinion, this constituted error prejudicial to defendant.
Our conclusion is that the judgment of the trial court should be reversed and the case remanded for another trial.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
TYSON, TAYLOR, PATTERSON and McMILLAN, JJ., concur.
BOWEN, J., concurs in result only.