The appellant, Jefferson Douglas Bridges, was found guilty of the offense of murder in the first degree and was sentenced to life in the penitentiary. The offense was allegedly committed on September 9, 1974, and the appellant was arraigned on December 6, 1984; the trial began January 28, 1985. Thereafter, this court reversed and remanded the case for a new trial in an opinion authored by Judge Leigh M. Clark which found that the trial court committed prejudicial error by overruling the appellant's motion for continuance, 487 So.2d 1012. The appellant was again found guilty of first degree murder and was again sentenced to life imprisonment.
Dennis E. Surrett testified that he was employed by the City of Talladega Police Department in 1984 and 1985. In late 1984, he received some information from Wayne Jones, a confidential informant, concerning a conversation that Jones had had with the appellant wherein the appellant admitted murdering Harold Purvis Davidson. Surrett thereafter borrowed some equipment from the Birmingham office of the Federal Bureau of Investigation and with it he "wired" Wayne Jones. Wayne Jones was instructed to turn the unit on at the appropriate time and that the unit would last for approximately three and a half hours to three hours and forty-five minutes. He was further directed to engage the appellant in conversation about Harold Purvis Davidson, the victim. However, Jones was not instructed to elicit from the appellant any specific information regarding the victim. The TIP Fund agreed to pay Wayne Jones approximately $1,525.00 or $1,550.00 in return "for this and some other things."
Surrett, on cross-examination, testified that Wayne Jones did not appear to have been drinking when he was wired with the first tape; however, when Jones returned *Page 897 
that afternoon to be wired for the second tape, Surrett testified that he smelled of alcoholic beverages. Surrett further testified that, from listening to the tape, it appeared that the two men were drinking beer and that in the second tape there was a conversation concerning some marijuana. Specifically, the conversation concerning the marijuana occurred when the two men were stopped by an officer with the Talladega Police Department, who wrote the appellant a ticket for driving while his license was revoked.
Surrett testified, on re-direct examination, that once the recording device was turned on the device was never turned off. The taped conversations occurred while Mr. Jones and the appellant were riding in a car. However, they were still engaged in conversation at the time the tape ended. The second tape was subsequently sent to Washington, D.C., in order for the F.B.I. to improve its quality.
Following the testimony of Dennis Surrett, the prosecutor moved to admit certain portions of the first tape. The prosecutor informed the court that there were portions of the tape that contained some objectionable material and he suggested that they go through the tapes and let the defense counsel make objections to the portions which he found objectionable. The prosecutor further stated that the defense counsel had indicated that he wished to offer all of the tapes and that such was satisfactory with the State. The defense counsel responded that he did not want any of the tapes offered and objected to the tapes being played.
Thereafter, the court conducted a hearing outside the presence of the jury. Wayne Jones testified that he was wired with the recorder while he and the appellant were driving around, drinking beer and talking. He testified that the appellant told him that Jackie Oglesby and he had gone to a store in order to buy some beer on credit from Harold Purvis Davidson. Jones further testified that the appellant told him that he robbed Davidson and shot him in the back of the head after Davidson refused to sell the appellant beer on credit. He also testified that the appellant stated that, "[i]f there ain't no witnesses, that murder is the easiest thing in the world to get away with." Jones identified the appellant in court as the man who had admitted killing the victim. Jones testified, on cross-examination, that both the appellant and he had drunk a good deal of beer, but that only their wives, who had been in the car earlier, had smoked marijuana.
Officer Donnie Canada testified that he stopped Wayne Jones and the appellant on the night in question because a taillight lens was broken. He then wrote the appellant a ticket for driving while his license was revoked. He further testified that, in his opinion, the appellant did not appear intoxicated although Wayne Jones did appear intoxicated.
The appellant then took the stand and testified that he was "pretty well drunk" on the day in question. He further testified that he and Wayne Jones smoked some marijuana which Wayne Jones was carrying in his car. He further testified that Wayne Jones bought the beer that they were drinking. He stated that he remembered Officer Canada stopping him, but when the defense counsel asked the appellant whether he was "so intoxicated as not to remember or appreciate what you are saying" the appellant replied, "Some of it, yeah. I was pretty well drunk." The appellant further testified that Wayne Jones continually questioned him about the Davidson murder and that he told Wayne Jones that he did not do it.
The court indicated on several occasions that the remainder of the tapes would be admitted into evidence if the defense counsel so moved. The defense counsel stated that he did not wish to offer any of the tapes. Thereafter, the trial court determined that any portion of the tape which the State attempted to offer into evidence that did not relate to the Davidson murder would be omitted upon objection from defense counsel. The court then went through a transcribed copy of the portion of the tape to be admitted, page by page, and omitted the statements objected to by the defense counsel. Subsequently, the *Page 898 
portions of the tape sought to be admitted by the State were played to the jury.
Jackie Oglesby then testified that on September 9, 1974, he was riding around with the appellant and that on that day they went to Purvis Davidson's store on two occasions. The prosecutor claimed surprise when Oglesby's testimony became extremely inconsistent with his testimony at the appellant's previous trial. Jackie Oglesby then claimed the Fifth Amendment privilege. Oglesby's attorney then testified that, in relation to this case, Oglesby had originally given a statement and that at his previous trial his testimony contradicted his earlier statement, which resulted in Oglesby's conviction for perjury. He also testified that he had been released pending his appeal. The prosecutor moved to admit Oglesby's statement from the previous trial on the basis that the present case was a retrial of the same issues and that the same parties and counsel were involved. The defense counsel objected, claiming that it would violate the appellant's right to cross-examine the witness. Thereafter, the statement was admitted into evidence.
 I
The appellant argues that the trial court erred in overruling his motion to suppress tape-recorded statements made by the appellant. The appellant also argues, in conjunction with this issue, that the trial court erred in refusing to play the entire tape-recorded statements outside the presence of the jury prior to ruling on whether or not the statements should have been admitted into evidence. Further, the appellant argues that the statements "were involuntary and induced by a paid political informant who created a situation, with the tacit approval of police authorities, in which the defendant became intoxicated on drugs and alcohol provided by the informant." The appellant also contends that the conversations "were partial and unfinished, the informant made the decision on which conversations to record, thereby eliminating potentially favorable statements, the tape recording had been altered or changed by enhancement process, the tape contained filthy, obscene language, which this Honorable Court previously ruled was induced by the informant and would cause an unfavorable reaction by a jury toward the defendant." Although the appellant argues that the trial court erred in refusing to play the entire tape-recorded statements outside the presence of the jury before determining their admissibility, the record indicates that the trial court offered to admit the entire tapes into evidence upon the defense counsel's request. The defense counsel had had access to the tapes for over a year prior to trial.
 "If a part of a conversation is adduced in evidence by the state as proving the defendant's declarations or confessions of guilt, the defendant has the right to call for the whole of what was said in that conversation relative to the subject matter of the issue. Chamber v. State, 26 Ala. 59 (1855); William v. State, 39 Ala. 532
(1865); Mullis v. State, 258 Ala. 309, 62 So.2d 451
(1953). The accused is entitled, on cross-examination, to bring out all that he said, at the same time and on the same subject. Parke v. State, 48 Ala. 266 (1872).
 "However, the rule which frowns upon incomplete confessions is designed to cover cases where an accused, after admitting commission of the criminal act, is prevented from going further and saying anything which might explain or justify his act. William, supra; United States v. Wenzel, 311 F.2d 164 (4th Cir. 1962); see generally 29 Am.Jur.2d 586, Evidence, § 535."
King v. State, 355 So.2d 1148, 1151 (Ala.Cr.App. 1978). See also Ashford v. State, 472 So.2d 717, 720 (Ala.Cr.App. 1985).
The appellant was permitted to examine both Detective Surrett and Wayne Jones as to the remainder of the confession, as well as having access to the remainder of the tapes.
 "A confession should be considered in its entirety. If the state introduced into evidence only a portion of an alleged confession, a defendant is entitled to introduce the remainder of what was said to and by him, including any exculpatory statements *Page 899 
which would bear upon the matter in controversy."
King v. State, supra, at 1151.
As in King, these rules were not violated in the present case.
Moreover, the record indicates that the defense counsel was given ample opportunity to strike any portions of the recordings to be admitted which he deemed objectionable. The trial court further indicated that it would sustain such objections where the language did not directly discuss the Davidson murder and, further, the trial court cautioned the defense counsel that their failure to so strike would lead to a finding of "invited error" if on appeal the appellant objected to such statements. Although it is clear that the recordings contained a large amount of obscene language, the appellant was accorded ample opportunity to omit such language. " 'A defendant cannot by his own voluntary conduct invite error and then seek to profit thereby.' Murrell v. State,377 So.2d 1102, 1105 (Ala.Cr.App.), cert. denied, Ex parte Murrell,377 So.2d 1108 (Ala. 1979)." Neely v. State, 469 So.2d 702, 705
(Ala.Cr.App. 1985).
Although the appellant argues that the tapes were changed or altered during their enhancement procedure, there is no evidence to support this contention. Dennis Surrett testified that he listened to the tapes before they were sent to the Federal Bureau of Investigation to be enhanced. He further testified that he listened to the enhanced tapes that he received from the F.B.I. He stated that the tapes were in the same or substantially the same condition as when the tapes were received by him. The unenhanced tapes, as well as the enhanced tapes, were admitted into evidence. Dennis Surrett also testified that he was familiar with the tape recording unit. He also indicated that he tested the recording device before he attached the unit to Wayne Jones and that the unit was in proper working condition. He further testified that he removed the tapes from the unit and placed them in sealed containers before sending them to Washington, D.C. Bruce Koenig testified that he was a supervisory agent for the Federal Bureau of Investigation and that the majority of his work concerned magnetic tape analysis, that is, enhancing tapes, analyzing voices, determining whether tapes have been altered, and analyzing non-voice signals. He testified that he enhanced the tapes in question, by running the tapes "through a set of filters to remove some of the noise that was on the tape." The tapes were then copied onto a reel-to-reel recorder, so that five reels came from one tape, "except that it has been enhanced, to make it a little more understanding." Koenig testified regarding the enhancement of the original tape. He indicated that the original tape "was exactly, when I received it and returned it, it would be the same. I just played it back which doesn't effect the tape at all. [The enhanced copies] are improved in intelligibility, in other words, you can hear the voice information better on the copies." He further stated that during the enhancement process, it would be impossible to delete or alter any words. "Even if somehow the examination was done incorrectly, it would just make a tape less understandable. You can't change what somebody said or take out what somebody says, or add to it." Koenig testified that he had performed the enhancement process "thousands of times" in the past and that the equipment was in proper working condition when used to enhance the tapes in question.
The admission of tape recordings into evidence is a matter within the discretion of the trial judge. Bufford v. State,382 So.2d 1162 (Ala.Cr.App.), cert. denied, 382 So.2d 1175 (Ala. 1980), and appeal after remand, 399 So.2d 894 (Ala.Cr.App. 1981). "[A] magnetic tape recording may be used as evidence when it is of matters otherwise legal, and provided proper safeguards are shown to have been used so as to protect the recording against error or spoliation" and the speakers recorded are properly identified and adequate safeguards are taken to insure authenticity. Fikes v. State, 263 Ala. 89,81 So.2d 303, 311 (1955), reversed on other grounds, 352 U.S. 191,77 S.Ct. 281, 1 L.Ed.2d 246 (1957). As this court stated inVoudrie v. State, *Page 900 387 So.2d 248 (Ala.Cr.App.), cert. denied, 387 So.2d 256 (Ala. 1980):
 "The rules for testing the admissibility of recordings have been outlined as follows:
 " ' "(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement." 58 A.L.R.2d at 1027-8.' "
Moulds v. State, 426 So.2d 942, 948-49 (Ala.Cr.App. 1982).
A proper predicate was laid for the admission of the tapes in the present case. There is no indication that the tapes were changed or altered in any material way. "[T]he fact that the tape was edited did not render it inadmissible, but only affected the weight that it would be given by the jury.State v. Woolridge, 2 Kan. App. 2d 449, 581 P.2d 403 (1978) (edited TV news video tape); Pease Co. v. Local Union 1787, [59 Ohio App.2d 238, 393 N.E.2d 504 (1978)]." Donahoo v. State,505 So.2d 1067 (Ala.Cr.App. 1986). See also Golston v. State,371 So.2d 471, 474 (Ala.Cr.App. 1979) (use of non-scale office diagram).
The appellant's argument that since only some of his conversations with Wayne Jones were recorded, and since Jones chose when to engage the recorder, the tape recording should not be admitted, is equally without merit. The record indicates that Jones was instructed to turn on the recorder when the appellant began to talk about the murder in question. Jones testified that he turned the recorder on soon after they began to ride around and before any conversation concerning the murder. Detective Surrett testified that after the tape had been engaged, it was never turned off. The appellant was given the opportunity to admit the other portions of the tape recorded statement.
There is no evidence that the tape recordings were altered so as to give a misleading account of the recorded conversations.United States v. Starks, 515 F.2d 112 (3d Cir. 1975). There is also no claim that any tapes were lost or destroyed. UnitedStates v. McCrane, 547 F.2d 204, 205-08 (3d Cir. 1976);Government of the Virgin Islands v. Testamark, 570 F.2d 1162
(3d Cir. 1978). See United States v. Muzychka, 725 F.2d 1061,1069 (3d Cir. 1984), cert. denied, 467 U.S. 1206,104 S.Ct. 2390, 81 L.Ed.2d 348 (1984).
The appellant's argument that his statements were involuntary because they were induced by a paid police informant is also without merit.
 "In the generally accepted sense of the term, as used in criminal law, a 'voluntary confession' is taken to mean a confession made of the free will and accord of the defendant without coercion induced by fear or threat of harm and without inducement by promising or holding hope of reward or immunity. . . . Stated otherwise, a confession should be excluded if the attending circumstances, or the declarations of those present at the making of the confession are calculated to delude the prisoner as to his true position, or to exert improper or undue influence over his mind. Thus, if an individual's will is overborne or if his confession is not the product of a rational intellect and a free will, his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure; coercion in obtaining a confession from an accused can be mental as well as physical."
29 Am.Jur.2d Evidence § 543 (19__). Wayne Jones was acting as an agent of the police department when recording the appellant's statement.[1] However, the practice *Page 901 
of police paying confidential informants is "not uncommon and is not illegitimate." United States v. Troupe, 702 F.2d 145,147 (8th Cir. 1983).
Wayne Jones testified that although he did believe he bought most of the beer, he did not use any money supplied to him by the State, nor did the State supply the beer. Jones and the appellant had known each for approximately five years and often drank together. Jones further testified that the State made no suggestion to him that he buy any alcohol or make the appellant drink. The evidence shows that the appellant willingly and voluntarily drank with Jones.
"It is not disputed that when police officers gather evidence through the assistance of an informant some deception is employed." Rassner v. State, 705 S.W.2d 798, 800
(Tex.Dist.Ct.App. 1986). However, where such deception does not affect the accused's volition in ingesting an intoxicant, there is no basis for a claim of involuntary intoxication. Id.
 " 'It is well settled that in order for intoxication to render a confession inadmissible, it must be shown that the mind of the defendant was substantially impaired when the confession was made. Moore v. State, 415 So.2d 1210, 1214
(Ala.Cr.App. 1982), cert. denied, No. 81-728 (Ala.), cert. denied, 459 U.S. 1041 [103 S.Ct. 459, 74 L.Ed.2d 610] (1982), and cases cited therein. "Intoxication, short of mania or such impairment of the will and mind as to make an individual unconscious of the meaning of his words, will not render a statement or confession inadmissible." Tice v. State, 386 So.2d 1187 (Ala. 1980), and cases cited therein. See also Palmer v. State, 401 So.2d 266, 268 (Ala.Cr.App.), cert. denied, 401 So.2d 270 (Ala. 1981), cert. denied, 455 U.S. 922 [102 S.Ct. 1280, 71 L.Ed.2d 463] (1982).' "
Free v. State, 495 So.2d 1147, 1156 (Ala.Cr.App. 1986), quotingMoore v. State, 488 So.2d 27 (Ala.Cr.App. 1986). See alsoMcCammon v. State, 499 So.2d 811 (Ala.Cr.App. 1986); Musgrovev. State, [Ms. 8 Div. 345, October 14, 1986] (Ala.Cr.App. 1986).
 "It has been generally held that proof that one who has confessed to a crime was under the influence of alcohol at the time of making a confession goes to the weight and credibility to be accorded to the confession, but does not require that the confession be excluded from evidence."
Annot., 25 A.L.R. 4th 419, "Sufficiency of Showing that Voluntariness of Confession or Admission was afforded by Alcohol or Other Drugs," § 2 [a] (1983). See also United Statesv. Smith, 638 F.2d 131, 134 (9th Cir. 1981).
Furthermore, the testimony indicates Wayne Jones and the appellant were drinking. Although the appellant testified that he was intoxicated, the officer who stopped the car on the night in question testified that he did not believe that the appellant was intoxicated.
 " 'Where the voluntariness inquiry presents conflicting evidence, great weight must be given to the trial judge's finding of voluntariness. Even when there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. [Case cites omitted]. "The trial court does not have to accept the testimony of [the] defendant as to the voluntariness of a confession if there is substantial testimony by others sufficient to constitute a predicate for the admission in evidence of the confession." Bradley v. State, 337 So.2d 47, 50 (Ala.Cr.App. 1976).' "
Free v. State, supra, at 1156, quoting Moore v. State,415 So.2d 1210, 1214-15 (Ala.Cr.App.), cert. denied, 459 U.S. 1041,103 S.Ct. 459, 74 L.Ed.2d 610 (1982). *Page 902 
Moreover, the appellant was only a target of the State's investigation and was not under arrest or in custody and did not have an indictment or other formal charge filed against him when he made his incriminating statement to Wayne Jones. "Until adversary judicial proceedings have commenced, coercive methods of eliciting information from a defendant are governed byMiranda and due process and self-incrimination analyses."United States v. Muzychka, supra, at 1069. The conversation did not require Miranda warnings, because the appellant was not in custody. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). Furthermore, the United States Supreme Court has indicated that where a defendant, prior to the time charges are filed, is not in custody, but is suspected of criminal activity, the government's use of undercover agents to obtain incriminating statements is analyzed as follows:
 "In Hoffa v. United States, 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966), for example this Court held that 'no interest legitimately protected by the Fourth Amendment is involved' because 'the Fourth Amendment [does not protect] a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.' See also United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Similarly, the Fifth Amendment has been held not to be implicated by the use of undercover Government agents before charges are filed because of the absence of the potential for compulsion. See Hoffa v. United States, supra, 385 U.S. at 303-304, 87 S.Ct., at 414-15."
United States v. Henry, 447 U.S. 264, 273, 100 S.Ct. 2183,2188, 65 L.Ed.2d 115 (1980). Furthermore, the Sixth Amendment right to counsel does not attach until adversary judicial proceedings have commenced. United States v. Franklin,704 F.2d 1183, 1189 (10th Cir.), cert. denied, 464 U.S. 845,104 S.Ct. 146, 78 L.Ed.2d 137 (1983); United States v. Hansen,701 F.2d 1215, 1220 (7th Cir. 1983); United States v. Brown,699 F.2d 585, 589 (2d Cir. 1983); United States v. Hamilton,689 F.2d 1262, 1275 (6th Cir. 1982), cert. denied, 459 U.S. 1117,103 S.Ct. 753, 74 L.Ed.2d 971 (1983). Thus, because the appellant was neither in custody or under arrest, nor subject to any indictment that had been issued, he was not entitled to any of the above-mentioned constitutional safeguards when he voluntarily entered into the conversation with Wayne Jones. The tape recordings were properly admitted into evidence.
 II
The appellant argues that the trial court erred in allowing Jackie Oglesby to invoke his Fifth Amendment privilege against self-incrimination. Oglesby fell within the purview of Amendment 5 of the Constitution of the United States, wherein it is stated, "No person . . . shall be compelled in any criminal case to be a witness against himself." The State, in its brief, cites United States v. Gray, 626 F.2d 494 (5th Cir. 1980), cert. denied sub nom. Wright v. United States,449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980); Fennel v. UnitedStates, 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980);Gray v. United States, 449 U.S. 1091, 101 S.Ct. 887,66 L.Ed.2d 820 (1981); and Barker v. United States, 450 U.S. 919,101 S.Ct. 1367, 67 L.Ed.2d 346 (1981). In United States v. Gray it is stated:
 "There is no Sixth Amendment right to compel a witness to go through the exercise of taking the stand when one knows in advance that the witness will assert his Fifth Amendment right against self-incrimination. There is no Sixth Amendment right to force another to 'take the Fifth.' United States v. Bolts, 558 F.2d 316 (5th Cir. 1977), cert. denied, 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1978)."
626 F.2d at 499. However, this proposition is inapplicable to the facts of the case at hand, in that neither the State nor the defense counsel were apparently aware that Oglesby would invoke his Fifth Amendment right against self-incrimination. The prosecutor claimed surprise when Oglesby claimed his privilege against self-incrimination. The fact situation of the case at hand also falls outside of the *Page 903 
rule that "a defendant's Sixth Amendment right to confrontation may be violated by introduction of a nontestifying co-defendant's extrajudicial statement inculpating the defendant." Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984). affirmed, 471 So.2d 493 (1985). See also Bruton v.United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476
(1968); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074,13 L.Ed.2d 934 (1965). Rather, Oglesby's testimony from the previous trial was properly admitted because Oglesby became unavailable by claiming his Fifth Amendment privilege against self-incrimination.
 "The testimony of a witness at a former trial is admissible in a second trial when at the time the witness is dead, under disability, is permanently absent from the State, or becomes unavailable by reason of claim of privilege at the second trial. Mims v. Sturdevant, 36 Ala. 636; Jeffries v. Castleman, 75 Ala. 262; McCoy v. State, 221 Ala. 466, 129 So. 21."
Wyatt v. State, 35 Ala. App. 147, 155, 46 So.2d 837, 843, cert.denied, 254 Ala. 74, 46 So.2d 847 (1950). See also Brown v.State, 386 So.2d 501, 502 (Ala.Cr.App. 1980). The appellant was afforded his right to confrontation at the previous trial.
 III
The appellant argues that the trial court erred in allowing testimony as to the cause of death of the victim and in failing to grant his motion for a directed verdict because the State failed to show the proper chain of custody of the victim's body. The record indicates that a post-mortem examination was conducted on the victim's body by Dr. James Buttram, who testified that the cause of the victim's death was a bullet wound to the back of his head.
The appellant contends that there was an important break in the chain of custody of the body. The record indicates that Davidson's body was taken by ambulance from his store to the hospital. The victim was still alive when he arrived at the hospital. The ambulance attendant, Timothy Calhoun, testified that he got the victim onto a stretcher and dispatched him to Citizen's Hospital. He then turned the victim over to the hospital personnel. He testified that neither he nor any other emergency medical technicians administered any life-saving techniques on the victim. Calhoun, on cross-examination, was unable to identify the hospital employee to whom he relinquished the victim, except that she was "an older lady in the emergency room." He further stated that as he was leaving the emergency room, Jimmy Curtis, the coroner, was entering. He further testified that he then waited ten to fifteen minutes before leaving the hospital. Calhoun testified that he believed that the older lady was the head nurse at the hospital. He further testified that Curtis was with the victim when he left. Jimmy Curtis testified that he turned the deceased over to Bill Perry, who owned Usery Funeral Home in Talladega. Jimmy Curtis testified, on cross-examination, that he received the body from ambulance attendants, examined the body, gathered some information, and contacted the funeral home and the State Department of Forensic Sciences. He further testified that the body was in the same condition when he relinquished it to to Bill Perry as it was when he received it. Bill Perry testified that he kept the body at the funeral home until he turned it over to Dr. Buttram and that the body was in the same condition when he turned it over to the doctor as it was when he had received it.
The appellant argues that because Calhoun was unable to identify the hospital employee to whom he relinquished the body and because that person did not testify, the State failed to establish a proper chain of custody of the body. The establishment of a chain of custody is needed to show a reasonable probability that the evidence has not been tampered with or altered. Smith v. State, 446 So.2d 68 (Ala.Cr.App. 1984).
 "[I]t is not necessary to prove to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from the object at the commencement of the chain. Slaughter v. State, *Page 904 411 So.2d 819 (Ala.Crim.App. 1981), cert. denied, 411 So.2d 819 (Ala. 1982). See also, Mauldin [v. State, 402 So.2d 1106 (Ala.Cr.App. 1981)]; Sexton v. State, 346 So.2d 1177 (Ala.Crim.App.), cert. denied, 346 So.2d 1180 (Ala. 1977). Moreover, where a weak link in the chain of custody is said to exist, it presents a question of the credit and weight to be afforded the evidence, rather than the admissibility of the item. Williams v. State, 375 So.2d 1257 (Ala.Crim.App.), cert. denied, 375 So.2d 1271 (Ala. 1979)."
Grice v. State, 481 So.2d 449, 451 (Ala.Cr.App. 1985). We find that the chain of custody of the victim's body was sufficiently proved by the State and that the testimony of Dr. Buttram sufficiently proved the victim's cause of death. See Smoot v.State, 381 So.2d 668, 671 (Ala.Cr.App. 1980) ("The trial court did not abuse its discretion in allowing [the medical examiner] to testify as to the cause of death in this case").
AFFIRMED.
All the Judges concur.
[1] In United States v. Walther, 652 F.2d 788, 792 (9th Cir. 1981), a search and seizure case, the court found that "two of the critical factors in the 'instrument or agent' analysis are: (1) the government's knowledge or acquiesence, and (2) the intent of the party performing the search." See also Stone v.Wingo, 416 F.2d 857, 860 (6th Cir. 1969) (actions of a private party are attributed to the State where " 'parties act . . . together in pursuance of some design or in accordance with some scheme.' ").