443 So.2d 1308 (1983)
Johnny EDDINGS
v.
STATE of Alabama.
7 Div. 132.
Court of Criminal Appeals of Alabama.
August 16, 1983.
On Return to Remand October 4, 1983.
Rehearing Denied November 1, 1983.
Certiorari Denied January 13, 1984.
Andrew W. Redd, Sylacauga, for appellant.
Charles A. Graddick, Atty. Gen., and Jean Williams Brown, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 83-209.
TYSON, Judge.
Johnny Eddings appeals his conviction in the Circuit Court of Talladega County, Alabama, had pursuant to § 13A-7-7, Code of Alabama 1975. Following a guilty verdict, a sentence of three years' imprisonment was imposed.

I
Just prior to trial, appellant's counsel filed a motion to quash raising the issue of the fact that a law partner of the assistant district attorney had served as foreman of the Grand Jury which returned the indictment in this cause. The Honorable Barry N. McCrary is, in fact, a law partner of the assistant district attorney, the Honorable Julian M. King.
At the hearing on the plea and the motion in which this issue was discussed, the following occurred: (R. 34).
"2/15/83 Pretrial motion to bring Steve Eddings to Court as witness granted. All other pretrial motions filed by defendant denied after hearing. JLF" (s/Jerry L. Fielding).
This court on August 2, 1982, in the case of Ervin v. State, 442 So.2d 123 (Ala.Cr. App.1983), has ruled on this very issue involving these same parties. In Ervin we remanded that case to the circuit court with directions that the appellant and his counsel be present and a hearing conducted on the issue as originally raised. We further directed that a transcript of this hearing be prepared, with appropriate findings set forth in writing by the trial judge, determining whether or not there had been confidential information with reference this cause exchanged between the law partner and the district attorney and any full or part time member of his staff.
*1309 As with Ervin, should the trial judge find that the law partner possessed no disqualifying knowledge when the Grand Jury was convened, then he was, in fact, competent to serve as a member of and to be the foreman of the Grand Jury. Ervin, supra.
Because of the necessity to clarify this issue, i.e., whether or not there existed a conflict of interest in this case, we hereby remand this cause with directions that a full hearing be conducted on the issue as herein set forth and that a transcript of such proceeding be promptly returned to this court. Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956).[1]
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN FROM REMAND
TYSON, Judge.
Johnny Eddings was indicted for burglary in the third degree in violation of § 13A-7-7, Code of Alabama 1975. The appellant was granted youthful offender status and following a non-jury trial, he was found guilty as charged and sentenced to three years in the custody of the Alabama Department of Corrections.

I
This case was remanded to the trial court with directions that it make a factual determination as to whether the law partner of the assistant district attorney, who served as foreman of the grand jury which returned the indictment in this case, possessed any disqualifying information relative to this case. The trial court submitted its written findings to this court which revealed:
"that Barry McCrary possessed no disqualifying knowledge when this Grand Jury that indicted Johnny Eddings was convened on January 10, 1983, and was therefore competent to serve as a member of and to be foreman of the Grand Jury based on the following findings of fact:
"(1) That Assistant District Attorney King did not confer with his partner, Barry McCary relative to the prosecution of Johnny Eddings at any time prior to the convening of the Grand Jury on January 10, 1983 or subsequent to the convening thereof in which Johnny Eddings was indicted.
"(2) That Assistant District Attorney King had no knowledge that Johnny Eddings had been charged with any crime or that his case was to be presented to a Grand Jury for its consideration prior to January 10, 1983.
"(3) That Assistant District Attorney King did not participate in prosecution of Johnny Eddings at this Grand Jury during this session. In fact, Mr. King was in the hospital when this Grand Jury was convened by Judge William C. Sullivan on January 10, 1983. That a true bill was rendered by this Grand Jury as to Johnny Eddings on January 10, 1983 and Assistant District Attorney King did not make an appearance at this Grand Jury until January 12 or January 13, 1983.
"(4) That the law partner to Assistant District Attorney King, namely Barry McCrary, did not confer with Assistant District Attorney King or any other member of the District Attorney's staff including the District Attorney, Robert Rumsey, relative to the prosecution of Johnny Eddings at any time prior to the convening of this Grand Jury on January 10, 1983, that indicted Johnny Eddings.
"(5) That Attorney Barry McCrary had no knowledge that Johnny Eddings had been charged with any crime or that this case was to be presented to a Grand Jury for its consideration prior to January 10, 1983.
"(6) That Attorney Barry McCrary and Assistant District Attorney King did not confer with each other after the convening *1310 of this Grand Jury relative to the prosecution of Johnny Eddings while this Grand Jury was in session.
"(7) That Attorney McCrary had no preconceived bias or prejudice as a Grand Juror in this case either because of his partnership with Assistant District Attorney King or for any other reason presented to this Court."
From the above recitation, this court finds that what appeared to have been a possible conflict of interest was, in fact, no conflict whatever. See Terry v. State, 424 So.2d 710 (Ala.Cr.App.1982). We can find no violation of §§ 12-16-207, 209, Code of Alabama 1975 or the Code of Ethics for Lawyers. Therefore, we hold the assistant district attorney's law partner was competent to serve as a member of and to be foreman of the Grand Jury which returned the indictment in the case at bar. The appellant's motion to quash the indictment was properly denied by the trial judge.

II
The issue we must now examine is whether the appellant's waiver of his constitutional rights and his subsequent confession were voluntary. Since confessions are prima facie involuntary, we must look to see if the State proved, in fact, the appellant's waiver and confession were understandingly, knowingly and intelligently made. Garrett v. State, 369 So.2d 833 (Ala.1979); Hines v. State, 384 So.2d 1171 (Ala.Cr.App.), cert. denied, 384 So.2d 1184 (Ala.1980).
Mary Hawthorne, the owner of Krystal Service Station, testified that on the morning of August 21, 1982, she arrived at her store and discovered it had been burglarized. Entry into the store was gained through a hole in the wall where the air conditioner had been removed. That day she observed the appellant and his brother, Richard Eddings, go around to the back of the station and point to the hole where the air conditioner had been. The boys did this five or six times throughout the course of the day, so she called Theodore Wilson of the Sylacauga Police Department and complained.
Wilson found the two boys in the area of the store so he asked them to go to the police station with him to talk over the matter and they agreed. On the way to the station, Wilson stopped at the appellant's house and asked his stepfather to accompany them to the station which he did.
At the station, Wilson read the boys their Miranda rights and a waiver of these rights and they indicated they understood what was read to them. The appellant then told Wilson that he and his brother were riding around on the night of the burglary and went to the service station. They removed the air conditioner, entered the store and took some beer and cigarettes.
Wilson then turned the boys over to Detective Ken Brasher. On August 23, 1982, Brasher read the boys their Miranda rights and obtained a statement from them. Mary Thomas, the person who transcribed the appellant's statement, testified he was extremely nervous when he gave his statement and when she read it back to him.
Prior to trial, a hearing was held on the appellant's motion to suppress his statement. At the hearing, Horace Pope, the Director of Special Education for the Talladega County Schools, testified that the special education students' records were kept in his custody, and he brought with him to trial court, the psychological evaluations of the appellant and his brother, Richard. The evaluations were done every three years and the appellant had last been tested on April 9, 1981, and withdrew from school on March 23, 1982. The test revealed the appellant's IQ was 49 which places him in the trainable mentally retarded (TMR) classification. Persons in this classification are only able to learn basic skills that will help them function in society, such as the ability to count change, take a bus, shop in grocery stores, etc. A TMR would be able to understand simple instructions but would not understand complex instructions involving more than two things *1311 without in-depth training. Pope further testified that neither the appellant's abilities nor his IQ would have improved over time without any additional training.
Betty Milam, a teacher of educable mentally retarded (EMR) students at B.B. Comer High School, testified the appellant was in her class for the two and a half years before he quit school. The appellant could not read or write but could copy. However, he could not understand what he was copying.
In her opinion, the appellant would not understand the Miranda rights without further explanation. Milam testified the appellant would not understand the words "waiver", "coercion", or "rights". She also stated that if the appellant were asked whether he understood something, he would probably answer yes in order to please the person asking the question.
"`[I]n most cases, the defendant's mental deficiency will be but one factor to be considered in the `totality of the circumstances' surrounding the confession. In some cases, however, it may be the most important or controlling factor. See e.g. Dover v. State, 227 So.2d 296 (Miss. 1969); People v. Langston, 57 Mich.App. 666, 226 N.W.2d 686 (1975). See also Redwine v. State, 258 Ala. 196, 61 So.2d 724 (1952). The importance of this factor increases with the degree of the accused's mental retardation because he must be able to understand his right to remain silent and to an attorney before he can waive them. It is a knowing and intelligent waiver that is required. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)'; Garrett v. State, 369 So.2d 833, 836 (Ala. 1979)." (Footnote omitted.)
Hines v. State, 384 So.2d 1171 (Ala.Cr. App.), cert. denied, 384 So.2d 1184 (Ala. 1980).
Although in very few cases will the mental deficiency of the appellant be the controlling factor in the determination as to whether the appellant's confession was voluntary, we believe this case is such a case. Officers Brasher and Wilson were well aware of the fact the appellant could not read or write but stated they did not know he was "slow". Both officers said they read the Miranda warning and the waiver to the appellant slowly, but this is not enough. Hines v. State, supra. In this case, it is clear from the record that the appellant could not understand his constitutional rights without adequate explanation. However, neither officer attempted to explain what they were reading to him even though they knew he was unable to read or write and was extremely nervous.
Furthermore, the suggestibility of this appellant must be taken into account. See Hines v. State, supra. Since the appellant's teacher testified he would be willing to say he understood a statement, even if he did not understand it in order to please the person asking the question, we believe there is a strong possibility the appellant made the statement at issue for this reason.
It is obvious from the testimony that the appellant would not understand certain key words in the Miranda warnings or what the word "waiver" meant. Since it is impossible for the appellant to knowingly, intelligently and voluntarily waive his constitutional rights without understanding their meaning or the consequences of the waiver of those rights, we must hold the appellant did not, in fact, knowingly, intelligently and voluntarily waive his constitutional rights. Therefore, we find that the appellant's confession was involuntary and inadmissible at trial and his conviction must be reversed for this reason.
This cause is due to be and is hereby reversed and remanded to the trial court for a new trial.
REVERSED AND REMANDED.
BOWEN, P.J., and TYSON and HARRIS, JJ., concur.
HUBERT TAYLOR, J., files dissent in which SAM W. TAYLOR, J., joins.
HUBERT TAYLOR, Judge (dissenting).
The judgment of the trial court should be affirmed. A police officer should not have *1312 the burden of determining the mental skills of an accused. His duty is to (1) advise the accused of his rights under Miranda, and (2) not use force, coercion, or any undue pressure, mental or physical, in obtaining a statement. These standards were fully complied with by the police officers. A relative of the accused was present at the time the statement was made. The statement was supported by the store owner. Under these circumstances, it is not for this court to hold the trial court abused its discretion in finding the confession to be voluntary.
NOTES
[1] The Fifth Amendment to the United States Constitution requires an indictment by a legally constituted and unbiased grand jury.