544 So.2d 987 (1989)
George Robert CARDWELL
v.
STATE.
4 Div. 897.
Court of Criminal Appeals of Alabama.
March 8, 1988 and March 17, 1989.
Rehearing Denied April 12, 1988.
Certiorari Quashed February 24, 1989
On Return to Remand May 26, 1989.
*988 William J. Paul, Geneva, for appellant.
Don Siegelman, Atty. Gen., and Jean Alexandra Webb, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 87-869.
TYSON, Judge.
George Robert Cardwell appeals his conviction in the Circuit Court of Geneva County, Alabama had pursuant to § 13A-7-7, Code of Alabama 1975. Following a jury verdict of "guilty", a sentence of 30 years' imprisonment in the state penitentiary pursuant to the Habitual Felony Offender Act was imposed.
Prior to the trial, appellant's counsel filed a motion to dismiss the indictment due to an alleged biased grand jury. Mrs. Brenda Eldridge, the wife of the Honorable Phil Eldridge, Assistant District Attorney for Geneva County, Alabama was a member of the grand jury during this term and participated in the deliberations leading to the return of the indictment of the appellant.
At the hearing on this plea and motion in which the issues are discussed, the following occurred:
"The court finds that due to an infected vocal cord, Mrs. Eldridge was unable to make noise at all. In other words, she couldn't talk. The court further finds from her testimony and the testimony of the foreman of the Grand Jury, that she had little, if no influence on the Grand Jury at all and the fact that she was the wife of an Assistant District Attorney had no effect or influence on the Grand Jury, its deliberations, its vote or its decisions in any cases.
"The court finds that the Grand Jury was legally constituted, properly impaneled and sworn. The court further finds that the Grand Jury was not predisposed to find one way or another at the time of its selection.
"The court finds that the Grand Jury had no preconceived bias in favor of the state so far as this defendant is concerned or any of the defendants. Order and motion to dismiss the indictment denied." (R.P. 26)

I
We remand this cause to the Circuit Court of Geneva County, Alabama with directions that the appellant and his counsel be present and that a hearing be conducted on the issue as originally raised. We further direct that a transcript of the hearing be prepared with appropriate findings set forth in writing by the trial judge determining whether or not there had been confidential information with reference to this cause exchanged between the Assistant District Attorney and his wife, or any discussions concerning this matter at any time between them, prior to the return of this indictment.
Should the trial judge find that Mrs. Eldridge possessed no disqualifying knowledge when the grand jury was convened nor, in fact, were there any discussions prior to the return of the indictment, then Mrs. Eldridge was competent to serve as a member of the grand jury in question. Eddings v. State, 443 So.2d 1308 (Ala.Cr.App. 1983). See also Noah v. State, 494 So.2d 870 (Ala.Cr.App.1986).
Because of the necessity to clarify this issue, i.e., whether or not there were discussions between the Assistant District Attorney and his wife concerning this case prior to the convening of the grand jury, or during its deliberations, we hereby remand this cause for the hearing as stated. We *989 further direct that a full hearing be conducted on the issues, as herein set forth, that both Mr. and Mrs. Eldridge be examined and that a transcript of such proceedings be promptly prepared and returned to this court, together with the trial court's written findings. Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).
REMANDED WITH DIRECTIONS.
TAYLOR, PATTERSON and McMILLAN, JJ., concur.
BOWEN, P.J., dissents with opinion.
BOWEN, Presiding Judge, dissenting.
I respectfully but vigorously dissent from the order of the majority remanding this cause so that the trial court might again do what it has already done.
The findings of the trial court are set out in the majority opinion. Those findings reflect that an evidentiary hearing was held after which the judge concluded that the fact that a member of the grand jury was the wife of an Assistant District Attorney "had no effect or influence on the Grand Jury, its deliberations, its vote or its decisions in any case." In my opinion, the appellant should not be given the opportunity to impeach the trial court's findings at a second evidentiary hearing.
My review of the record discloses that there was no request that the hearing be transcribed and made a part of the record on appeal. I have found no objection in the record to the manner in which the hearing was conducted. There was no motion for new trial. There is no motion to correct the record. Rule 10(f), A.R.A.P. Rule 10(d) specifically provides: "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection." There has been no motion filed pursuant to this rule.
The decision of the majority violates several fundamental principles of appellate practice, procedure, and review. "An appellant `bears the burden of bringing the record before an appellate court. He and his counsel have the duty of checking the record before submitting the appeal. It is their duty to file a correct record.' Harris v. State, 420 So.2d 812, 816 (Ala.Cr.App. 1982) (citations omitted).... Rule 10(f), Alabama Rules of Appellate Procedure, `specifically authorizes the correction of an omission from the record.' Pope v. State, 387 So.2d 300, 301 (Ala.Cr.App.1980) See also Weaver v. State, 401 So.2d 344 (Ala. Cr.App.1981). Since this rule has not been invoked to supply the complained of omission, there is nothing for this court to review." Welch v. State, 455 So.2d 299, 300 (Ala.Cr.App.1984).
"[I]n the absence of the evidence and proceedings on the trial, all presumptions must be indulged in favor of the trial court. Error cannot be presumed." Thomas v. State, 231 Ala. 606, 607, 165 So. 833 (1936). "When there is no showing to the contrary, the presumption is always in favor of correct action on the part of the trial judge." Ballard v. State, 236 Ala. 541, 542, 184 So. 260 (1938). "It is also the well established rule that doubtful recitals must be construed most strongly against the excepter.... Appellant has the burden of showing reversible error, and error must affirmatively appear." Id. "Substantial error is not presumed, but the burden is upon the appellant to show error." Edwards v. State, 274 Ala. 569, 570, 150 So.2d 710 (1963). "A reviewing court cannot predicate error on matters not shown by the record. Indeed, a silent record supports a judgment. It is the appellant's duty to file a correct record." Robinson v. State, 444 So.2d 884, 885 (Ala.1983) (citations omitted). A finding by a court, sitting without a jury, on the oral testimony of witnesses, will not be reversed on appeal "unless plainly erroneous." Scruggs v. State, 165 Ala. 121, 51 So. 302, 303 (1909).
Even when these rules are followed, the appellate process often seems endless. By its decision in this case, the majority does away with what little finality remains in the judicial process. In my opinion, the ruling of the trial judge must be affirmed *990 because there is nothing in the record to contradict his findings.

SECOND OPINION
TYSON, Judge.
On March 8, 1988, this court determined that the prior hearing in this cause failed to properly develop the issue of any prior knowledge or discussion had by and between Mrs. Brenda Eldridge as wife of the Honorable Phil Eldridge, Assistant District Attorney for Geneva County, Alabama, and Eldridge, with reference to the participation by and deliberations within the grand jury of Geneva County, Alabama, which returned an indictment against this appellant.
As noted in our prior opinion, it is necessary to clarify this issue to whether or not there were any discussions between the assistant district attorney and his wife concerning the case prior to the convening of the grand jury or during its deliberations.
We hereby remand this cause for a further hearing to clarify this issue.
A due return shall be promptly prepared following such hearing and returned to this court together with the trial court's findings of fact on this issue. Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956) and Cardwell v. State, supra.
REMANDED WITH DIRECTIONS FOR HEARING.
All the Judges concur.

ON RETURN TO REMAND
TYSON, Judge.
George Robert Cardwell was indicted for burglary in the third degree in violation of § 13A-7-7, Code of Alabama 1975. The jury returned a verdict of "guilty" and George Robert Cardwell was sentenced to 30 years' imprisonment in a state penitentiary pursuant to the Alabama Habitual Felony Offender Act.
On January 12, 1987, this appellant, Cardwell, and Richard Allen Bryant broke into the Marsh Barber and Thrift Shop in Geneva County, Alabama. Entry was gained through an air ventilation duct that had not been used since the building was formerly a restaurant. The air duct was boarded up with plywood and nails which were pried away in order to gain access. The air duct was not on ground level, thus, a person would need some type of elevation to enable them to crawl into this duct.
Richard Allen Bryant was staying with the Cardwells while he was visiting their granddaughter. He had been at the Cardwell home for a couple of weeks at the time of this burglary. The appellant also lives with his parents and brother. On the day in question the appellant, Cardwell, and Richard Allen Bryant had been drinking heavily.
There was an eyewitness to the burglary. Luke Speigner, a nine-year-old boy, saw this appellant helping Richard Allen Bryant into the air duct. The boy testified that he saw Richard Allen Bryant on the appellant's shoulders and, also, saw him enter the air duct. He did not see the appellant enter the building. He immediately went to tell his mother what he had seen and she then called the police.
The facts are in dispute from this point. The appellant contends that he never went into the building, but says he believes he waited outside. He did testify that he boosted Richard Allen Bryant on his shoulders so that Bryant could enter into the building through the air duct. He testified that it was Bryant's idea to break into the shop and that Bryant took the money and hid it in the Cardwell home underneath the television.
The appellant's father testified that the appellant remained in the house, which is located less than 100 yards behind Marsh's Thrift Shop. The father testified that he and his son watched from the den window as Richard Allen Bryant climbed on a steel drum and entered the shop. This testimony is contradicted by that of this appellant, who said he was helping Bryant into the air duct to the building.
Richard Allen Bryant, who pleaded guilty to the burglary, testified that the *991 appellant boosted him on his shoulders to enable him to enter the air vent. He then went to the front door of the building and unlocked it to let the appellant into the store. Bryant and the appellant then emptied the cash registers which only contained change. The total amount taken from the cash registers was $13.84.
Mr. Marsh, the owner of Marsh's Thrift Shop testified that some tools valued at around $100 had also been taken from the shop. Both the appellant and Richard Allen Bryant deny taking any tools from the shop. After the burglary, Mr. Marsh confronted the appellant's father and brother and told them that, if the tools were not returned, he would press charges. Shortly thereafter, the father and brother returned with two armloads of tools. The appellant contends that he often did work for Mr. Marsh and, when he worked for him, he had Marsh's permission to borrow and use, and did borrow, tools from Marsh's toolshed behind the Thrift Shop. The appellant testified that these tools had been borrowed from the toolshed. Mr. Marsh testified that the tools had been taken from within the Thrift Shop and were not tools from the toolshed. Mr. Marsh testified that he had taken the tools in on a trade and that they were fairly new and that some were still in the package.
The appellant and Richard Allen Bryant were arrested shortly after this burglary. The arresting officer, Bobby Caswell, testified that Luke Speigner, the nine-year-old eyewitness, identified the appellant, Cardwell, and the appellant was arrested less than an hour and a half later. Richard Allen Bryant was identified by the boy at the police station, but the appellant was identified by name to the police. Luke Speigner, the eyewitness, lives across the street from Marsh's Thrift Shop and the Cardwells.
The arresting officer, Bobby Caswell, testified that the appellant had been read his Miranda rights. He also testified that Cardwell had been drinking but was not under the influence, as he had seen him many times in the past. The officer stated that the appellant could walk but was staggering a bit. The arresting officer, Caswell, stated that he warned the appellant about giving a statement but that appellant voluntarily waived his rights and said that he helped Bryant up to the air vent and once Bryant entered the building Bryant opened the front door and let him in the building.
When the appellant was asked whether he entered the building, his response was, "when Bryant let him in they went in." He then confessed to taking some money and hiding it at his brother's house underneath his chest of drawers.
The appellant and his mother and father, live in the same dwelling. The police went to the Cardwell home. The brother of the appellant, James Cardwell, consented to the search and signed a consent form, and the money was found where the police had been told it would be found.

I
Brenda Eldridge, wife of the assistant district attorney and a part time employee of the district attorney's office, served on the grand jury panel in this case and her husband was present at the grand jury proceedings. The appellant contends that her presence deprived him of a legally constituted and unbiased grand jury.
Brenda Eldridge, the wife of the assistant district attorney, was a member of the grand jury that returned the indictment against this appellant.
The trial court held a hearing on this issue and found that, due to her infected vocal cords, Mrs. Eldridge was unable to make noise at all. In other words, she could not talk. The court further found from her testimony and the testimony of the foreman of the grand jury, that she had little, if any, influence at all, and the fact that she was the wife of an assistant district attorney had no effect or influence on the grand jury or its deliberations, its votes, or its decisions in the case. The court found that the grand jury was legally constituted, properly empaneled and sworn. The court further found that the grand jury was not predisposed to find one way or another at the time of its selection. The *992 court found that the grand jury had no preconceived bias in favor of the State so far as this appellant, Cardwell, is concerned.
The appellant's attorney has filed a return to the further remand order of this court in which he states the following:
"I have questioned both Brenda Eldridge and Phil Eldridge privately.
"Since this appeal was filed, I have had an opportunity to examine both Phil Eldridge and Brenda Eldridge under oath with the Defendant present.
"In all these conversations, Brenda Eldridge and Phil Eldridge both have consistently maintained that they had no prior conversations regarding George Robert Cardwell's case.
"Defendant's contentions have not been that this particular case was discussed before the indictment but the possibility of prejudice is so strong and tainting of such an important process is so damaging that no spouse of an assistant DA should be allowed to sit on the grand jury especially when the assistant DA is present in the courtroom."
The appellant's attorney has also filed in this court a copy of the transcript of the hearing conducted by the trial judge on this question, the same bearing the date of May 4, 1988.
The examination of both Brenda Eldridge and her husband, Phil Eldridge, who served as the assistant district attorney, indicates that neither of them discussed with the other any aspect whatsoever of the appellant's case. There were no indications within the grand jury that Phil Eldridge had any connection with the presentation of the case to the parties serving on the panel. Mrs. Eldridge indicates that she was not aware of the names of any of the parties whose causes were under consideration and had no contact with them personally. She stated that it was difficult for her to speak because she had an ulcer on her vocal cords and she, therefore, did not communicate with other members of the grand jury.
In Mr. Eldridge's testimony at the hearing, he indicates that he did not participate in the presentation of the cases. He simply turned the files over to the district attorney, who made the presentation of the various witnesses to the grand jury panel. He states that he may have seen the names on some of the files, but that he did not contact his wife, nor was he aware of any of the votes or the decision made on this appellant's cause or any other. In short, there was no discussion between the husband and wife with reference to this cause or any other pending before the Geneva County Grand Jury during this term.
In light of this record, we agree with the trial court that Mrs. Eldridge possessed no disqualifying knowledge while serving as a member of the grand jury which was convened and which returned the indictment in this cause. We further find that there were no discussions between the husband and wife at any time prior to the return of the indictment in this cause. In view of the foregoing, Mrs. Brenda Eldridge was therefore, in fact, competent to serve as a member of the grand jury in question. Eddings v. State, 443 So.2d 1308 (Ala.Crim.App. 1983). See also, Noah v. State, 494 So.2d 870 (Ala.Crim.App.1986). No error is shown.

II
The appellant's counsel contends that the admission of an alleged oral confession by a defendant who was mentally retarded, had been previously committed to a mental institution, had a first grade education equivalent and, therefore, could not read or write more than his name, was an alcoholic, and was intoxicated at the time the confession was given, unduly prejudiced this case.
The trial judge in his discretion found that the admission by the appellant was given freely and voluntarily and was, thus, admissible. We agree.
The record shows that the appellant was given his Miranda warnings and that Officer Bobby Caswell warned the appellant about giving a statement, but he voluntarily waived his rights and then talked freely with Caswell.
*993 It is well established that intoxication short of "mania", or such an impairment of the will and mind as to make the person giving a statement unconscious of the meaning of his words, will not render the confessions, inadmissible. Bedingfield v. State, 47 Ala.App. 677, 260 So.2d 408 (1972). See also, Eaton v. State, 423 So.2d 352 (Ala.Crim.App.1982). The arresting officer, Caswell, testified that the appellant was slightly intoxicated, but not to the extent that he had seen him many times before.
The appellant's counsel further contends that the mental capacity of the appellant was so diminished as to make his confessions involuntary. The record shows testimony of his mental ability from Jerome Hire, who is employed by Wire Grass Mental Health Center in Geneva County. He stated that the appellant "is low functioning and would be in the mild mental retardation range, however, he knows right from wrong regardless of alcohol." "[I]n most cases, the defendant's mental deficiency will be but one factor to be considered in the `totality of the circumstances' surrounding the confession." Garrett v. State, 369 So.2d 833, 836 (Ala.1979). Considering all the circumstances present in this case, we find that the trial judge's finding that the appellant made a knowing and intelligent waiver is supported by the evidence. See Watters v. State, 371 So.2d 456, 458 (Ala.Crim.App.1979).
Furthermore, the presence of a diminished mental capacity, coupled with use of alcohol or drugs, will not warrant a finding that the confessions were not voluntary. Having a low I.Q. will not invalidate the statement unless the I.Q. is so very low that the person making the statement absolutely cannot understand his Miranda rights. Arnold v. State, 448 So.2d 489 (Ala.Crim.App.1984). The evidence in this case falls far short of proof of such a condition.

III
The appellant's counsel contends that the sentence of 30 years, where his prior offenses were all non-violent crimes against a person, and where the use of alcohol was a contributing factor in such case, violates the Eighth Amendment's prohibition against cruel and unusual punishment because he entered a building and only took $13.84.
This appellant has been convicted of 12 previous felonies and admits to at least three, wherein the appellant was represented by counsel. The provisions of the Habitual Felony Offender Act are mandatory and are not discretionary in application. Willis v. State, 455 So.2d 914 (Ala.Crim. App.1983), rev'd on other grounds, 455 So.2d 917 (Ala.1984).
The appellant's intoxication was just one factor the trial judge could consider in sentencing this defendant. As long as the sentence imposed is within the statutory boundaries, this court will not overturn decisions of the trial court unless there is clear abuse. None is shown here. Williams v. State, 456 So.2d 852 (Ala.Crim. App.1984).

IV
The appellant's counsel asserts many "miscellaneous objections" of which only number two is reviewable by this court. One, three and four fail to state any authority so, therefore, they will not be reviewed by this court. Vinzant v. State, 462 So.2d 1037 (Ala.Crim.App.1984).
Appellant's counsel contends that the trial judge failed to adequately define "intent" in his jury charge. In reviewing the record, we find the trial judge to have more than adequately defined intent. Therefore, the appellant's counsel's claim lacks merit.
This principle was fairly and substantially covered by the trial court's oral charge. Ala.Code § 12-16-13 (1975). No error is shown.
We have carefully reviewed this record and find no error. The cause is, hereby, affirmed.
AFFIRMED.
All the Judges concur.