584 So.2d 872 (1991)
Kenneth E. HOLDER
v.
STATE.
8 Div. 470.
Court of Criminal Appeals of Alabama.
January 18, 1991.
On Return to Remand April 26, 1991.
Rehearing Denied May 31, 1991.
Certiorari Denied August 16, 1991.
*874 David Schoen, Montgomery, for appellant.
Don Siegelman, Atty. Gen., and Jean A. Therkelsen, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1901445.
TAYLOR, Judge.
The appellant, Kenneth Holder, was convicted of the murder of Billy Don Jarrett. He was sentenced to 55 years in prison.
This case has previously been returned to the Circuit Court of Jackson County on appellant's motion to supplement the record on appeal. See Rule 10(f), A.R.App.P. The appellant has suggested in a footnote in his brief that the circuit court failed to file a complete supplemental record. That footnote reads as follows:
"The record still fails to set forth the proceedings held in connection with Mr. Holder's motion to dismiss. Similarly, the record on appeal does not contain a list of jurors nor any indication as to the race or sex of prospective and sitting jurors nor are juror numbers set out so that any issue regarding the use of peremptory strikes with respect to jurors can be analyzed. Other omissions from the record include requested jury instructions, and action by the court on such instructions, and Mr. Holder's pre-sentence investigation report."
In the appellant's previous motion to supplement the record, he had requested that all pre-trial hearings, all proceedings and documents relating to jury selection, opening statements and closing arguments of counsel, and all documents filed with the trial court which were not included in the original transcript, be filed with this court. We do not now pass judgment on what items must or must not be included as a part of the "record proper." We remand this case to the Circuit Court of Jackson County for that court to consider this footnote as an additional motion under Rule 10(f), A.R.App.P., rather than to face this issue again in subsequent proceedings. Due return shall be filed with this court within 45 days.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

ON RETURN TO REMAND
TAYLOR, Judge.
The appellant, Kenneth E. Holder, was indicted for the capital murder during the course of a robbery of Billy Don Jarrett. He was convicted of the lesser included offense of murder and was sentenced to 55 years in prison. We initially remanded this case so that the record could be supplemented with a transcript hearing on the motion to dismiss, a list of jurors indicating their race and sex, requested jury instructions, and the rulings of the trial court on each of these requested instructions. We note that this is the second time that the record has been supplemented on appeal. *875 The supplemented record still does not contain the requested jury instructions or the rulings thereon. It is the appellant's duty, not the duty of this court or the trial court, to make a correct and complete record on appeal. See Cardwell v. State, 544 So.2d 987 (Ala.Cr.App.1989). The appellant raises the following issues.

I
The appellant initially argues that the evidence was insufficient to find him guilty of murder. The state's evidence tended to show that on December 23, 1988, Billy Don Jarrett was found seriously injured near a boat dock in Bridgeport, Alabama. At the time he was discovered, the victim was still breathing. An ambulance was called. The chief of police of Bridgeport arrived shortly after the ambulance attendant and recognized the victim as Billy Don Jarrett. The victim had been shot twice in the back with a shotgun. Bird shot pellets were recovered from his lungs, kidneys, spleen, heart, intestines, back, arms, and buttocks. The coroner testified that there were over three hundred individual wounds on the victim's body. The cause of death was loss of blood.
A routine investigation, in which officers talked with the victim's friends and neighbors, led the police to the appellant. The appellant made several statements to the police in which he said that he and the victim had been drinking and playing craps the evening of his death and that he, the appellant, had won money from the victim. As a result of a consensual search of the appellant's home, the partially burned wallet of the victim was found in a wood burning heater. The victim's driver's license and fishing license were still in the wallet. A 20-gauge semi-automatic shotgun was also recovered from the appellant's home. After tests were performed, the gun was identified as the murder weapon. Shells found in the appellant's home also matched those found near the victim. A witness testified that he saw the victim standing on the road near the boat dock. He appeared to be talking with an individual in a black Ford truck. The appellant drove a black Ford truck. Evidence also revealed that at the time of his arrest the appellant had approximately $100.00 more in his possession than he had received in pay that week. Testimony further established that the victim had slightly less than $100.00 in his possession on the day that he was killed. William Fulmer, a resident of Bridgeport whose home is near the boat dock, testified that he heard gunshots on December 23, 1988, at approximately 7:00 p.m. Evidence also showed that the appellant had bought the gun which was identified as the murder weapon several weeks prior to the incident.
The appellant testified in his own behalf and denied shooting the victim. He said that he had known the victim for approximately 30 years and that on the day of the victim's death he and the victim had played craps. He said that he had won about $50.00 from the victim. The appellant stated that when the victim had left his house on the day of his death, the victim had been drinking heavily. He also stated that he had encouraged the police to check the guns which he owned to show that he did not kill the victim.
As Judge Tyson, speaking for this court in DeRamus v. State, 565 So.2d 1167 (Ala. Cr.App.1990), wrote:
"A conviction will not be set aside on the basis of insufficiency unless `allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust.'"
DeRamus, 565 So.2d at 1171, quoting Johnson v. State, 378 So.2d 1164, 1169 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala.1979). See also Horth v. State, 553 So.2d 694 (Ala.Cr.App.1989).
We must view the evidence in the light most favorable to the State. Daniels v. State, 581 So.2d 536 (Ala.Cr.App.1990); Higdon v. State, 527 So.2d 1352 (Ala.Cr. App.1988); King v. State, 505 So.2d 403 (Ala.Cr.App.1987). In the instant case the evidence presented was circumstantial evidence. Circumstantial evidence is not inferior or deficient evidence. See Linzy v. *876 State, 455 So.2d 260 (Ala.Cr.App.1984). "Circumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused." Casey v. State, 401 So.2d 330, 331 (Ala.Cr.App. 1981). "Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court." Cumbo v. State, 368 So.2d 871, 875 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala.1979). "Conflicting evidence presents a question for the jury and a verdict rendered thereon will not be reversed on appeal." Horth, 553 So.2d at 698.
The above evidence was clearly sufficient to present the case to the jury for their determination. "We will not substitute our judgment for that of the jury." Neal v. State, 460 So.2d 257, 260 (Ala.Cr.App.1984).

II
The appellant next argues that the trial court erred in allowing several items to be received into evidence without first having established a proper chain of custody. Initially, the appellant argues that the state failed to establish a proper chain of custody for the victim's body. Testimony showed that the victim was brought to the emergency room by an ambulance attendant, Randall Gibson. Gibson delivered the body to a Dr. Wayne, the emergency room physician, at approximately 9:00 p.m. on the night of the shooting. The next morning the body was delivered to the coronor by Bill Wright, of the forensics laboratory in Huntsville, approximately 15 minutes prior to the coronor's commencing his autopsy. No testimony was received concerning the time the body was handed over to Dr. Wayne in the emergency room at 9:00 p.m. on the night of the shooting, and the exact time that the body was delivered by Bill Wright to the coronor.
"The establishment of a chain of custody is needed to show a reasonable probability that the evidence has not been tampered with or altered." Bridges v. State, 516 So.2d 895, 903 (Ala.Cr.App.1987). (Emphasis added.)
"`[I]t is not necessary to prove to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from the object at the commencement of the chain. Slaughter v. State, 411 So.2d 819 (Ala.Crim.App.1981), cert. denied, 411 So.2d 819 (Ala.1982). See also, Mauldin [v. State, 402 So.2d 1106 (Ala. Cr.App.1981) ]; Sexton v. State, 346 So.2d 1177 (Ala.Crim.App.), cert. denied, 346 So.2d 1180 (Ala.1977).'"
Bridges, 516 So.2d at 903-04.
This court recently addressed a situation where results of a blood test were admitted into evidence even though two individuals who handled the blood samples during the chain of custody did not testify at trial. See Moorman v. State, 574 So.2d 953 (Ala.Cr.App.1990). Using the totality of the circumstances test, Judge Bowen stated in Moorman and in Snowden v. State, 574 So.2d 960 (Ala.Cr.App.1990), that the totality of the circumstances established a "reasonable probability" of the integrity of the evidence. Judge Bowen further stated in Moorman that in that case there had been no break in the chain of custody. Because of the unique nature of the wounds in this case, we do not believe any break or weak links in the chain of custody were fatal to the admission of the evidence. Pictures were taken before the ambulance attendant took the victim to the hospital. The individual in the pictures was identified as Billy Don Jarrett. The victim was also identified at the scene by Chief of Police Mashburn who knew the victim. The victim had approximately 300 pellets in his body when the coroner performed the autopsy. The wounds were unique. Any question here concerning the chain of custody went to the weight and not to the admissibility of the evidence. Furthermore, the appellant made no showing that the body had been tampered with or altered in any way. The trial court committed no error in allowing the coroner to testify concerning the cause of death.
*877 The appellant next argues that the trial court erred in allowing the victim's clothes to be received into evidence. The appellant contends that no testimony was received which established the continuous chain of custody of the clothes. Ambulance attendant Gibson testified that when he arrived at the scene where the victim was discovered, Officer Roger Campbell, of the Bridgeport Police Department, was already there. Gibson stated that the victim was still breathing when he arrived. He cut the victim's clothes off of him and tried to administer aid. He laid the clothes beside the victim, and they were later taken into custody. The attendant testified at trial that he could not remember whether the victim's clothing had had bullet holes in the back. Officer Mashburn arrived on the scene approximately 15 minutes after Gibson. He secured the scene to protect the evidence. However, we note that an officer was present when the ambulance attendant arrived. The integrity of the evidence was sufficiently established to receive the clothes into evidence. As Judge Bowen recently restated in Moorman, supra:
"`The principles governing chain of custody challenges were outlined in United States v. Lane, 591 F.2d 961 (D.C.Cir. 1979), as follows:
"`"Tangible evidence of crime is admissible when shown to be `in substantially the same condition as when the crime was committed.' And it is to be presumed that the integrity of evidence routinely handled by governmental officials was suitably preserved `[unless the accused makes] a minimal showing of ill will, bad faith, evil motivation, or some evidence of tampering.' If, however, that condition is met, the Government must establish that acceptable precautions were taken to maintain the evidence in its original state.
"`"The undertaking on that score need not rule out every conceivable chance that somehow the identity or character of the evidence underwent change. `[T]he possibility of misidentification and adulteration must be eliminated,' we have said, `not absolutely, but as a matter of reasonable probability.' So long as the court is persuaded that as a matter of normal likelihood the evidence has been adequately safeguarded, the jury should be permitted to consider and assess it in the light of surrounding circumstances."`"
Moorman, 574 So.2d at 957; quoting United States v. Roberts, 844 F.2d 537, 549-50 (8th Cir.1988), cert. denied, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988). This case is very similar to the recent case of Reese v. State, 549 So.2d 148 (Ala.Cr.App. 1989). In Reese, the clothing of the victim was left unattended in the hospital after it had been removed from the victim. Judge Bowen stated in Reese:
"For the few moments that the evidence was within the purview of the medical staff who did not testify to their parts in the chain of custody, there was only the remotest possibility of substitution, alteration, or tampering."

Reese, 549 So.2d at 153. In the instant case, an officer was present at the scene from 8:00 p.m. when the victim was discovered until the clothes were taken into custody. We are mindful of the fact that officers on a daily basis deal with evidence and know the importance of leaving physical evidence undisturbed. No error occurred here.
The appellant also contends that the trial court erred in allowing pellets taken from the victim to be received into evidence. The coroner testified that he had removed pellets from the victim's body and had handed them over to Bill Wright, who is with the forensic laboratory in Huntsville. Wright turned them over to Brent Wheeler, also of the forensic laboratory. Bill Wright did not testify at trial. The same analysis would apply to this issue that we have previously applied to the clothes and that this court applied in Moorman. No error occurred here.

III
The appellant next argues that the trial court erred in allowing two statements made by the appellant to be received into *878 evidence. Three statements made by the appellant were received into evidence. Two statements were made in the early morning hours following the evening of the shooting. The appellant also made a statement several days later, however, on appeal he does not question the introduction of this third statement. The appellant initially made the following statement:
"The first time I saw Billy Don Jarrett was about two or three p.m. Friday; someone brought him to my house in a pick-up [truck] and let him out. He brought some whiskey. We took a drink and started rolling dice. We started out playing for two dollars and then went to five. We played forty-five minutes to an hour. Billy Don left my house walking before dark. I laid down on the couch for about two hours and then I went to my brother's house. He is Floyd Holder. He lives just down below me. This was about 7:00 p.m. I stayed there about one hour, then I went to my mother's house. She also lives close to us. This was about 8:00 p.m. I stayed at mother's thirty to forty-five minutes and then went home. My son, Kenny, and my nephew, Scottie Holder, [were] at my house. When I got there, I ate a bowl of ice cream; then I went to bed and stayed there until the officers came in, and I don't remember what the officers said to me. They asked me to go to City Hall in Bridgeport and the officers said they got Billy Don's billfold out of my heater. I didn't build a fire yesterday, but I did burn some papers in the heater. While me and Billy Don was playing dice present was Marie Holder, my son and nephew. Present at Floyd's house was me, Floyd, his wife, Betty, and Randy, Floyd's son, and his wife, Patty, and about three or four kids, small. This was from about 7:00 to 8:00 p.m. The only ones present at mother's was her [and] Harold, he was in bed. I did not go anywhere else last night until the police came. My son and nephew [were] walking late last night. They didn't use my truck. It gets dark about five or five thirty."
The appellant also stated in his second statement:
"I shot a cat yesterday around twelve noon. I only shot once. That's the only time I shot the gun since I bought it. It's a 20-gauge single shot breakdown. I don't remember the brand. I bought the gun from Charles Rorex this past Tuesday. I paid him forty dollars for it. I shot at the cat beside the house. The only other time the gun was shot was Tuesday and that was at my brother's house down below me. I did not ride down the road in my truck and talk with Billy Don while he was walking. My truck has not been around the boat dock. The only time I saw Billy Don was when he came to my house. Billy's brother, Junior Jarrett, told me several times that he was going to kill Billy Don. They didn't get along when they were drinking."
The appellant contends that he was not read his Miranda[1] rights prior to the taking of each statement, thus, he argues, they should have been suppressed. The appellant's allegations are totally unsupported by the record. The record shows that the appellant was given Miranda warnings three times during the period between 12:15 a.m. to 6:00 a.m. on the morning of December 24, 1988. Each time, the appellant also signed waiver forms. Officer Tubbs testified that the appellant had been drinking but that he was not drunk. It is also clear from the record that the appellant was not coerced or threatened to make the statements.
Before any custodial statements may be allowed into evidence, the state must show that the defendant was read his Miranda rights and that his waiver of those rights was voluntary. See Griffin v. State, 500 So.2d 83 (Ala.Cr.App.1986); Magwood v. State, 494 So.2d 124 (Ala.Cr.App.1985), aff'd, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). There was clearly sufficient evidence for the trial court to conclude that *879 the requirements of Miranda had been met.
Moreover, a review of the record casts some doubt as to whether the appellant was in a custodial setting at the time that he made the two statements. As the appellant himself remarked in one of the statements, the officers asked him to come to city hall to talk with them about the victim. Many of the victim's friends and relatives were also asked to come to city hall. The conversations took place in a "plush" conference room. When there is no custodial setting, Miranda is inapplicable. See Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).
The appellant also contends that the items obtained from the search of his home should not have been received into evidence because he was not informed of his Miranda rights prior to the search. Once again this contention is totally unsupported by the record. It is clear that on the two occasions on which a search was conducted of the appellant's home, he was read his Miranda rights and signed consent to search forms. No error occurred in admitting the items obtained from his residence into evidence.

IV
The appellant next argues that the trial court erred in denying his motion to dismiss the indictment. Specifically, he contends that the indictment was vague, overbroad, unclear, and otherwise defective. The appellant was charged with capital murder committed during the course of a robbery. The indictment reads as follows:
"Kenneth E. Holder, whose name to the Grand Jury is otherwise unknown than as stated, did, intentionally cause the death of Billy Don Jarrett by shooting him with a shotgun and Kenneth E. Holder caused said death during the time that Kenneth E. Holder was in the course of committing a theft of a wallet containing an unknown amount of lawful currency of the United States, a more definite description of said property being to the Grand Jury unknown, the property of Billy Don Jarrett, by the use of force against Billy Don Jarrett, with intent to overcome his physical resistance or physical power of resistance, and at the time caused serious physical injury to the said Billy Don Jarrett, in violation of Section 13A-5-40(a)(2) of the Code of Alabama, subsequent to 12:01 A.M., January 1, 1980, the effective date of said Section 13A of the Code of Alabama."
An "accused has a constitutional right to be informed of the charges against him." Wilbourn v. State, 452 So.2d 915, 916 (Ala.Cr.App.1984). "An indictment must specify the conduct sought to be condemned so that the defendant may have an opportunity to prepare a defense if one is available." Ex parte Hightower, 443 So.2d 1272, 1273 (Ala.1983). An indictment should apprise the defendant of the charges against him. See Wilder v. State, 401 So.2d 151 (Ala.Cr.App.), writ denied, 401 So.2d 167 (Ala.), cert. denied, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). It is sufficient if the indictment "with definiteness states the constituents of the offense." Lyle v. State, 497 So.2d 834, 836 (Ala.Cr.App.1986). The indictment is sufficient if it alleges the elements of the statute or words which are equivalent in meaning. See Tinsley v. State, 485 So.2d 1249 (Ala.Cr.App.1986). The indictment in the instant case was clearly sufficient to apprise the appellant of the charges against him and to give him opportunity to defend against those charges.
The appellant also argues that the indictment was deficient because it did not state the amount of money which was stolen from the victim. Since the appellant was found guilty of murder and not capital murder, this argument is moot. The jury found him guilty of murder, thereby acquitting him of capital murder, murder during the course of a robbery. "Only the count upon which appellant was found guilty is subject to appellate review." Hammond v. State, 354 So.2d 280, 284 (Ala.Cr.App.), cert. denied, 354 So.2d 294 (Ala.1977). Furthermore, the indictment is clearly not deficient in that respect. See McClain v. State, 480 So.2d 20 (Ala.Cr.App.1985).

*880 V
The appellant next argues that the trial court erred in its instructions to the jury on the effect of the statements made by him to police. The record reflects that after the trial court instructed the jury, defense counsel made no objections. As Rule 14, A.R.Crim.P.Temp. (now Rule 21.2, A.R.Crim.P.), states:
"No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
As the state notes, there a charge conference was held prior to the giving of the court's oral instructions; however, a transcript of this conference is not contained in the record on appeal. We note that this case has twice been returned to the circuit court to supplement the record. It is the appellant's duty to file a complete record on appeal. See Cardwell v. State, 544 So.2d 987 (Ala.Cr.App.1989).
Moreover, we believe that the trial court correctly instructed the jury on the jury's function in relation to the statements made by the appellant. The trial court gave the following instruction:
"Now, there's been evidence offered to you concerning alleged statements made by the Defendant to officers in this case. This Court has admitted these into evidence, but the weight and credibility that you give to this evidence is for you to decide. You may consider, and should consider, all of the facts and circumstances surrounding the taking of these various statements in determining what weight or credibility, if any, that you give to them."

VI
The appellant next argues that his Fifth, Sixth, Eighth and Fourteenth Amendments rights were violated by the prosecutor's comments in closing argument. The appellant points to at least six instances in the prosecutor's closing argument that he says, warrant reversal. However, at no instance during the closing argument did defense counsel object to the argument made by the prosecution. Thus, this argument has not been preserved for appellate review. See Johnson v. State, 479 So.2d 1377 (Ala.Cr.App.1985).

VII
Appellant further argues that the trial court erred in its instruction to the jury on not using "sympathy or emotion." As stated previously, there are no objections in the record after the trial court instructed the jury. Thus, nothing is preserved for appellate review. See Rule 14, A.R.Crim.P.Temp. A review of the record shows that the trial court's instruction in this regard was correct. The appellant was indicted for capital murder, and the trial court's instruction in this regard did not prejudice him. No error occurred here.

VIII
The appellant further contends that the accumulated errors in the jury selection process prejudiced him. A review of the jury selection process shows that no objections were made concerning the allegations the appellant makes on appeal. Thus, this argument has not been preserved for our review. See Johnson, supra.

IX
The appellant next argues that the trial court erred in failing to give the jury instructions on the lesser included offenses of manslaughter and criminally negligent homicide. As stated above, the record contains no objections made after the court gave its oral charge to the jury. According to Rule 14, A.R.Crim.P.Temp., this issue has not been preserved for appellate review.
Furthermore, the evidence in the instant case does not support the giving of these instructions. "An accused is not entitled to have the jury charged on a lesser included offense unless there is a reasonable theory *881 from the evidence to support the lesser offense." Nelson v. State, 452 So.2d 1367, 1371 (Ala.Cr.App.1984).

X
Last, the appellant argues that the trial court erred in allowing cumulative evidence, which, he argues, was prejudicial, to be received into evidence. Specifically, he contends that the receiving into evidence of photographs and x-rays of the victim were cumulative and resulted in prejudicial error. As this court stated in Bankhead v. State, 585 So.2d 97 (Ala.Cr.App.1989) aff'd, [Ms. 89-1179, May 24, 1991] 585 So.2d 112 (Ala.1991):
"`Photographs which show external wounds in the body of a deceased victim, even though they are cumulative and based on undisputed matters, are admissible. The fact that they are gruesome is not grounds to exclude them so long as they shed light on the issues being tried.'"
Generally, whether to admit photographic evidence is left to the sound discretion of the trial court and its decision will be reversed only when an abuse of discretion has occurred. See Bankhead; Magwood v. State, 494 So.2d 124 (Ala.Cr.App.1985), aff'd, 494 So.2d 154 (Ala.1986), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1987). We believe that the photographs and x-rays were helpful in showing the jury the extent of the victim's injuries. No error occurred in receiving them into evidence.
For the foregoing reasons, this case is due to be, and it is hereby, affirmed.
OPINION EXTENDED; AFFIRMED.
All the Judges concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).